Guse v. Flohr, 195 Wis. 139.

━━━━━

GUSE, Appellant, vs. FLOHR and others, Respondents.

*January 13—February 7, 1928.*

*Easements: Grant not created by reservations: Permissive use of way: Rights of owner of servient estate: When use becomes adverse: Fence along right of way: Right of maintenance.*

1. Where one on whose land a road was situated desired to abandon it, and entered into an agreement with other users thereof that, on permission to abandon, he would construct another road, giving such others permission to use it forever, reserving in himself the privilege of use in common with them, such agreement was not a conveyance of the land on which such right of way was situated, but was merely the giving of a right of way. p. 145.

2. Although a reservation is always something taken back out of that which is clearly granted, the application of this rule does not operate to create a grant if none otherwise exists. p. 145.

3. If the use of a way was permissive, and there is nothing to bring home to the owner of the fee that the licensees claimed to use the way other than under the original written permission, there is no support for a claim by adverse user, as it requires declarations or acts of the most unequivocal character to change a use permissive in the beginning into one of an adverse character.   p. 145.

4. The owner of a servient estate, whether a way over the same be public or private, may make any and all uses of the land consistent with the enjoyment of such easement.   p. 146.

5. The owner of the fee of a road in which adjacent owners had an easement of travel had the right to maintain a fence between such road and the adjacent owners' land; and even though the users of the road assumed the burden of maintaining the fence, it did not deprive the owner of his right to do so.   p. 146.

6. The fact that plaintiff's motive in insisting on his rights as to the maintenance of a fence along the highway was spiteful and unreasonable does not bar such rights as he may have under the law, since the motive is immaterial.   p. 147.

7. The users of the road under the easement could not diverge from the way as described in the instrument creating it, nor change its location, merely because their needs were different seventy-five years after the creation of the easement than they were at the time of its creation.   p. 147.

APPEAL from a judgment of the county court of Dodge county: D. W. AGNEW, Acting Judge.   *Reversed.*

Injunction.   This action was begun on the 26th day of July, 1926.   Judgment was entered May 17, 1927.   The plaintiff began this action to restrain the defendants from interfering with his erection of a certain fence.

In 1852 the plaintiff's predecessors in title were the owners of the northeast quarter of the southwest quarter of section 22, town of Emmet.   The defendants' predecessors in title were the owners of the remainder of said southwest quarter, so that plaintiff's lands were bounded on the south and west by the lands of the defendants.   A public highway ran through the center of the section on the east line of the southwest quarter.   The lands of the plaintiff and his predecessors in title will hereafter be referred to as plaintiff's lands, and the lands of the defendants and their predecessors

in title as the defendants' lands, irrespective of the time when the parties acquired title.

On the plaintiff's land was a highway leading from the north-and-south highway to plaintiff's lands to the west, which was about nine rods from the southerly boundary of plaintiff's land. In order to procure a discontinuance of the highway, enhance the value of his lands, and afford the defendants a way to their property, Hyland, plaintiff's predecessor in title, entered into the following agreement with the owners of defendants' lands:

"I, James Hyland, the owner of the within described land, do, in consideration of the said Gustav Werlich and Moritz Flohr agreeing to have the road across my land, as laid out by Mathew Norton and Jacob Stam, and recorded in the town of Emmet June 11, 1849, discontinued, do hereby consent that a private road be laid out on my land for their accommodation and for the accommodation of all persons who may own or occupy the said lands after them, and do agree to keep and maintain the fence on the south line thereof at my own expense, forever. The said road to be of the width as stated in the annexed survey, reserving the privilege of using the said road myself in common with them. The right of way is granted free of all charges whatever, also the said Hyland agrees that the crossway across the marsh on the road to be discontinued may be used by them, together with the right of way down to the said private road for eighteen months from this date.

"Dated May 2, 1852.                              His

                              "James  X  Hyland.
                                        Mark

"We hereby consent to have the above described road discontinued on condition that James Hyland gives the right of way for a private road according to the annexed survey.

                              "Gustavus Werlich.
                              "Moritz Flohr.
                              "Julius Werlich."

Attached to the agreement was the survey bill as follows:

"I hereby certify that I have this day, by order of the supervisors of the town of Emmet, surveyed a private road

on section 22 of the town aforesaid, center line described as follows, to wit: Commencing at a post in the center of the highway leading from Watertown to the village of Juneau, being twelve and one-half (12½) feet, west of the 8th line between Charles Decasse and James Hyland, thence S. 83° W. parallel to the line aforesaid nineteen and fifty-hundredths (19.50) chains, to post, on the line between Moritz Flohr and James Hyland, station (1) one, width of road, one and one-half (1½) rods, thence N. 9° W. on said line nine and sixty-five hundredths (9.65) chains, to post termination, width of road from station one to termination one (1) rod variation of compass 6° east. (Emmet, May 22, A. D. 1852.)

"D. D. Dewey, Surveyor."

The agreement was not recorded in the office of the register of deeds but was recorded in the office of the town clerk.

Pursuant to the arrangement, the public highway upon the lands of the plaintiff was discontinued and the private way described in the agreement and survey was laid out approximately parallel to the southerly line of plaintiff's lands, and ever since that time the makers of the agreement and their successors in title have used said premises as a way. The question as to who maintained the fence on the south side of the way was sharply contested upon the trial. The court found that it had at all times been kept up and maintained by the defendants and their predecessors in title at their sole expense. The court further found that the defendants and their predecessors in title for twenty years and more preceding the commencement of the action had occupied the way adversely to any right of the plaintiff except the right of the plaintiff to use the way in common with others, and further found that the defendants were now the owners of the fee. The court found that the defendants removed the fence on the south side of the way; added a strip of their own land one rod in width to the way; and improved the strip so widened by ditching and grading the same.

"That following the grading of said private road the plaintiff constructed a fence of wire and iron posts along

the same at which he claimed was on the line of the old south fence of wooden posts and wire, but the same was not on such line, and was farther north than such old south fence; that such new fence was constructed from the east end of said private road to the concrete culvert across the town ditch and left no opening therein as same had theretofore at all times existed, whereby defendants obtained access to and from their land adjoining said private road on the south.

"That the plaintiff was without any right or authority to so construct said fence and the same constituted and was an obstruction in said private road.

"That on or about July 20, 1926, defendants removed said fence so constructed by plaintiff and placed the same in the ditch running along the north side of said private road, and that in so removing same the defendants acted in good faith and were within their rights, and that no unnecessary damage was done to said fence.

"That the old fence constructed and maintained by defendants and their predecessors in title along the south line of said private road was at all times out of alignment, and was not upon the line between plaintiff's and defendants' land, and was not a partition fence, and was not intended so to be."

The court also found that it would be contrary to public policy to permit the plaintiff to erect or maintain a fence within the private road as widened by the defendants; that the widening of the road and the improvements thereon were for the defendants a matter of reasonable necessity; that the plaintiff suffered no damages by reason thereof, and that the survey of George W. Morse correctly establishes the east-and-west line between the northeast quarter of the southwest quarter and the southeast quarter of the southwest quarter of said section 22.

The court concluded as a matter of law that the defendants are the owners of the private way, subject to the right of the plaintiff to use the same; that the plaintiff is without any right to have the fence along the south line of said private road maintained at the place where it was immediately prior to removal by the defendants; that the plaintiff is without

any right to have a fence maintained anywhere within the limits of said private way as widened; that it would be contrary to public policy to enjoin defendants from widening said private road and improving the same; that it would be contrary to public policy to permit the plaintiff to erect or maintain a fence within said private way as widened by the defendants; denied relief to the plaintiff, and directed that the plaintiff's complaint be dismissed with costs. From the judgment entered in accordance therewith the plaintiff appeals.

For the appellant there was a brief by *Otto Kuenzli* of Watertown and *Eugene Clifford* of Juneau, attorneys, and *McGovern, Lyons, Curtis, Devos & Reiss* of Milwaukee, of counsel, and oral argument by *Mr. F. E. McGovern* and *Mr. Kuenzli.*

For the respondents there was a brief by *Skinner & Thauer* of Watertown and *Clark & Lueck* of Beaver Dam, and oral argument by *Nicholas Thauer, Richard C. Thauer,* and *A. W. Lueck.*

ROSENBERRY, J. The plaintiff assigns the following errors:

"The court erred in finding that the failure of the plaintiff and his predecessors in title to keep the fence on the south side of the right of way in repair constituted a waiver and abandonment of his right to maintain a fence upon that line.

"The court erred in finding that the fence along the south line of said private road was not a partition fence. . . .

"That the court erred in finding that the Hyland agreement operated as a conveyance of the fee to the grantees therein named with a reservation in the grantor of a right of way over the same.

"That the court erred in finding that the widening of the right of way and the grading of same and the covering of same with gravel was reasonably necessary to the use and enjoyment of the same by the defendants, and was reasonably necessary to the use and enjoyment of their said farm."

The contention that the document dated May 2, 1852, was a conveyance of the fee is based upon the proposition that Hyland reserved the privilege of using the way himself in common with others, which reservation would have been unnecessary if he remained the owner of the fee, and that therefore it must have been his intention to convey the fee.

The case of *Fischer v. Laack,* 76 Wis. 313, 45 N. W. 104, is cited in support of the proposition. While it is true as there stated that a reservation is always something taken back out of that which is clearly granted, we are cited to no case and find none where the application of that rule operates to create a grant. If there be a grant and the question is whether the language used by the grantor amounts to a reservation or an exception, then the rule is applicable.

It is too plain for argument that what the parties intended was that Werlich, Flohr, and Werlich should have a right of way over the lands of Hyland, the boundaries thereof to be fixed in accordance with the survey, and that Hyland should have an equal right with Werlich, Flohr, and Werlich in the use of said strip as a way.

It is considered, therefore, that the plaintiff owns the fee of the land to his south boundary, subject, however, to the rights of the defendants and others to use the strip as a way. The right of the defendants and others to the use of this way is not a mere license, but a right acquired by the defendants' predecessors in title for a good consideration, to wit, the surrender of their right to have maintained a public highway across plaintiff's lands as then laid out.

There is no support in the record for the contention that the defendants acquired title to the way by adverse possession. From the beginning the use of the way was permissive. There is nothing in the record to support a finding that the defendants ever brought home to the plaintiff or his predecessors in title, in any way, a claim that they occupied the strip which they used as a way other than under the

writing of May 2, 1852. It requires declarations or acts of the most unequivocal character to change a use permissive in the beginning to one of an adverse character. *Pinkum v. Eau Claire,* 81 Wis. 301, 51 N. W. 550; *Perkins v. Perkins,* 173 Wis. 421, 180 N. W. 334, 181 N. W. 812.

What are the rights, duties, liabilities, and obligations of the respective parties with reference to the easement granted by the plaintiff's predecessors in title to the predecessors in title of the defendants? In the determination of the issues in this case the trial court went far afield and quite apparently attempted to buttress his conclusion by findings of fact and conclusions of law that have but little if any relation to the controlling issues in the case. Instances of this are findings as to public policy, adverse possession of the way, acquirement of title by the erection of the fence on the south boundary of the way, and other like matters. It is established that the owner of the servient estate, whether the way over the same be public or private, may make any and all uses of the land which may be made by him consistently with the enjoyment of the easement. In the matter of fences, the writing of May 2, 1852, provided that the plaintiff should maintain a fence on the south line of the way. This line was the southern boundary line of his land and the northern boundary line of lands owned by the defendants. His right to maintain this fence could not be questioned even if there had been no covenant in regard to it in the easement. The fact, if it be a fact, that defendants assumed the duty of maintaining this fence did not deprive the plaintiff of his right to have it maintained. Nor could the maintenance of the boundary fence operate to give the defendants title to the land upon which it stood. It is not denied, as we understand the case, that the Morse survey correctly indicates the location of the east-and-west line between the lands of plaintiff and defendants. Plaintiff's right to maintain a fence on that line seems to be beyond legal controversy.

*Sizer v. Quinlan,* 82 Wis. 390, 52 N. W. 590; *Dudgeon v. Bronson,* 159 Ind. 562, 64 N. E. 910, 65 N. E. 752, 95 Am. St. Rep. 315, note beginning on p. 318, "Rights and obligations of the owner of the fee," and cases cited. See, also, note "Adaptation, improvement and repair of right of way," L. R. A. 1918 A, p. 593; *Harvey v. Crane,* 85 Mich. 316, 48 N. W. 582, 12 L. R. A. 601, and note; *Bellevue v. Daly* (14 Idaho, 545, 94 Pac. 1036), 15 L. R. A. N. S. 992 and note.

It appears from the record that the refusal of the plaintiff to permit the removal of the fence to a point one rod farther south, whereby the width of the way would be increased one rod, is unneighborly, spiteful, and unreasonable. However that may be, the legal rights of the plaintiff remain the same. The mere fact that he does not choose to obey the Golden Rule and do unto others as he would have others do unto him does not change his legal rights, nor does it deny him the right to apply to a court for the determination and protection of these rights, particularly in this case where the jurisdiction of a court of equity is in no way challenged. There can be no balancing of equities in this case. It is quite apparent that the defendants have proceeded upon a wrong theory of the case. Their remedy is to ask the town authorities to lay out and establish the highway as the same is now fenced and maintained. This the proper authorities have ample power to do. The damages would be merely nominal if the defendants waived their right thereto.

The defendants cannot diverge from the way as described in the instrument creating it or change its location merely because their needs are different today than they were seventy-five years ago when the easement was created. Nor have they any right to extend the use to other land. While it is for the benefit of the plaintiff as well as the defendants that the way be widened and improved, the plaintiff is not obliged to give his consent thereto. If he refuses to give

his consent, the law provides a way by which the easement may be enlarged.

The rights of the plaintiff are so plainly and clearly established and the determination of the questions so far discussed so completely dispose of the issues that we do not find it necessary to enter upon a discussion of other questions raised in the briefs.

*By the Court.*—Judgment appealed from is reversed, and cause remanded with directions to enter judgment as indicated in this opinion.