SHEPARD and others, Appellants, vs. GILBERT, Respondent.

*April 12—June 6, 1933.*

4

For the appellants there was a brief by *Frank & Pelkey* of Appleton, and oral argument by *Julius P. Frank* and *Heber H. Pelkey*.

For the respondent there was a brief by *Velte & Molzow* of Neenah, and oral argument by *Chas. H. Velte*.

WICKHEM, J. The question in this case is whether the uses made by the plaintiffs and their predecessors in title were permissive or adverse.

It is the first contention of the plaintiffs that "when it is shown that there has been the use of an easement for twenty years *unexplained,* it will be presumed to have been under a claim of right and adverse, and will be sufficient to establish a right by prescription and to authorize the presumption of a grant, unless contradicted or explained." *Carmody v. Mulrooney,* 87 Wis. 552, 58 N. W. 1109; *Wilkins v. Nicolai,* 99 Wis. 178, 74 N. W. 103; *Wegner v. Erffmeyer,* 193 Wis. 212, 213 N. W. 472; *Kiefer v. Fox,* 193 Wis. 361, 214 N. W. 441; *Frank C. Schilling Co. v. Detry,* 203 Wis. 109, 233 N. W. 635.

It is the contention of the defendant that the doctrine of the cases above cited was not intended to apply where the land was uninclosed, and that this case is governed by the doctrine of the case of *Bassett v. Soelle,* 186 Wis. 53, 202 N. W. 164, in which this court drew a distinction between "uninclosed lands" and "inclosed lands," and held that the

mere use of a track or way over uninclosed lands, especially woodlands, for the statutory period does not raise a presumption that the use is adverse to the rights of the owner. The rule of this case is restated and affirmed in *State v. Town Board,* 192 Wis. 186, 212 N. W. 249.

According to the contention of the defendant, the *Carmody Case* is distinguishable from the *Bassett Case* upon this ground and is not inconsistent with it. There can be no question but that the *Bassett Case* contains statements which give color to the argument of defendant that user for twenty years of uninclosed land is not presumptively adverse, and that the presence or absence of an inclosure is the sole circumstance which creates or repels the presumption of adverse user. While such a distinction has the virtue of certainty, it seems to be unsatisfactory as a universal test. It therefore becomes necessary to examine in a little more detail the reasons stated by the court in the *Bassett* and *Town Board Cases,* and to see if these point to an intention to establish such a distinction. In the *Bassett Case* it is stated:

". . . It is a matter of common knowledge that where there is uninclosed woodland, like that here in question, it is customary for the public, for purposes of pleasure or convenience, to pass through it without express permission. So long as such use causes no inconvenience to the owner he would be regarded as unneighborly and churlish to forbid the use. In some parts of this state there are large areas of open woodland through which many persons pass without restraint. These lands are held by the owners with the expectation that when it is practicable they will inclose and cultivate them. It would be a harsh rule that the owners of such lands must stand guard over them or be deprived of valuable rights by those who have taken advantage of liberal treatment. It is for such reasons as these that it is generally held that the mere use of a passway through woodland will not give a right of way by prescription."

In *State v. Town Board,* 192 Wis. 186, 212 N. W. 249, it is said, in commenting upon the *Bassett Case:*

"It might have been said, also, that there is no consideration of morals or of public policy which requires the penalizing of that neighborly consideration which permits or acquiesces in the use of a way over wild and uninclosed lands in a wild and undeveloped region."

While it may be difficult to state in a satisfactory manner the precise conditions under which the *Bassett* and *Town Board Cases* are to apply, it is evident that the court had something in mind other than a mere distinction between "inclosed" and "uninclosed" land. It was in the mind of the court that in certain localities there was unimproved property largely in a state of nature and in such form as to make it customary for the public, for purposes of convenience and pleasure, to pass through it without permission, and indeed without any great harm to the owner; that in such a situation any attempt on the part of the owner to exclude the public would not only be difficult but would constitute an act of unsociability which the average owner would hesitate to commit. We think the rule cannot be applied either to urban property or to property which is either improved or in the process of being improved, whether for use as agricultural lands or as city property. For example, the doctrine could not properly apply to a lawn in a residential section of a city, even though the lawn was uninclosed. It may be difficult to state precisely the limits of the doctrine further than to suggest that it applies to lands that are wild, unoccupied, or of so little present use as to lead legitimately to the inference that an owner would have no motive in excluding persons from passing over the land.

In this connection it is proper to state that the fact of permission by an owner to an adverse user is important not so much as an independent fact but rather in the light that

it throws upon the character of the user. If there is permission to use a way and a user concededly in response to the permission, the user cannot be adverse in character.

"If the *prima facie* case, made by such continuous use, had been met by proof that it was under a license or contract, or permission of some character, or explained in some way as not hostile to the title of the true owner, the presumption of adverse use arising from the evidentiary facts stated would have been destroyed." *Wilkins v. Nicolai,* 99 Wis. 178, 74 N. W. 103.

Thus it is to be noticed that it is not merely the permission but user *under the permission* that destroys the adverse character of the act. If such permission is given, a subsequent use without comment or dissent by the person receiving permission may reasonably be assumed to be in response to the permission and in subordination to the title of the owner. If, however, the user, whether at the outset or later, proposes to hold not under the permission given but adversely, and makes this intention manifest to the owner, the permission is not effective to destroy the adverse character of the use.

"But if at any time after permissive possession commence there be a distinct denial of the right of the true owner brought home to him, that constitutes a new and hostile entry and a sufficient ouster of such owner to set the period of adverse possession running, which, if not thereafter interrupted, will at the expiration of the statutory period ripen into a perfect title." *Meyer v. Hope,* 101 Wis. 123, 77 N. W. 720.

It is obvious that one to whom such a permission is given, who manifests no adverse intent except by conduct equally consistent with an intention to act in accordance with the permission, ought not to be considered to have brought home to the owner notice of the character of his user. No matter how notorious or open the use, the fact of permis-

sion, in the absence of a disavowal of intention to act under the permission, gives to conduct of the user the appearance and color of a subordinate use. So in the case of lands to which the *Bassett Case* applies, it is assumed not merely that there is a general permission, but that such use as ordinarily takes place is consistent with assent to the permission, and fails adequately to notify the owner of an intention to use adversely, where such intention existed. Hence the refusal to presume an adverse use. Had one claiming to have acquired an easement by prescription surveyed a road over such lands, and improved it, or cut such trees as interfered with it, the character of such acts would be a sufficient indication to the owner that they were not in response to the permission and that the user was hostile or adverse.

With these principles in mind, some consideration should be given to the character of the property herein involved. The strip of land which is the subject of this action is part of a forty-acre tract in the city of Neenah. For many years this tract had been owned by one Pleasants as trustee for the Pleasants family. Originally it was open and uninclosed woodland, and remained unplatted until 1924, and all conveyances of land therein before 1924 described the land by metes and bounds.

In 1889 C. R. Smith, father of plaintiffs, acquired title to land now known as lot 11, block 7, Assessor's Plat East of Fifth Street, Neenah, from Anna Gilbert and her husband, William Gilbert, and thereafter built a house and barn on lot 11. At the time of the purchase of lot 11, lot 10, adjoining lot 11 on the east, was occupied by the William Gilbert family, and on this property there was also a house and barn. Both lots fronted and abutted on East Forest avenue. The location of the pieces of property heretofore and hereafter described will be made clear by reference to the plat which is herewith printed.

DEFENDANT'S EXHIBIT "1"

The testimony shows that probably as early as 1890 C. R. Smith began to use the open space north of his lot, the easterly part of which is now known as lot 20, which lot is the subject of this action, as a passageway from the rear end of his lot and from his barn thereon out to Ninth street, by walking over it, and in general using it as alleys or driveways are ordinarily used. The use of this lot in this fashion seems to have extended continuously for the whole period. The Gilbert families on both sides of this open space also made similar use of it. Mr. Pleasants made no use of the strip. Lot 20 was sufficiently free of trees so that an areaway or driveway could be readily found upon it.

There is testimony that in or about the year 1902 Mowry Smith and Carlton Smith constructed a plank sidewalk running the entire length of lot 20. This was used in walking over this lot. In 1895 the defendant and her husband moved into their home on the property known as lot 1, fronting on Ninth street and lying north of lot 10, with lot 20 intervening. At this time there were six or seven homes in the forty-acre tract, and the property was being gradually improved and built up. This description is probably sufficient upon which to base a conclusion as to the character of this property.

Obviously, the case presents some difficulties. No doubt this property, at some time or other, fell under the head of "wild and uninclosed woodland" and was subject to the rule of the *Bassett Case*. At such time, however, as it began to assume the character of a suburban development and to be broken up and disposed of for residential property, it seems to us that at least the portion now designated as lot 20 lost its character as wild and unimproved property and assumed that of property over which there was no general invitation to the public to pass. From this point of time, which goes back far enough to include the time when C. R. Smith pur-

chased lot 11 and built his house, we think the doctrine of the *Bassett Case* does not apply, and that the case is governed by the *Carmody Case*. It is therefore our conclusion that by the time the use of lot 20 began, the property was no longer to be classified as wild and uninclosed woodland, nor was the use of it such as usually is made of such lands. Hence a presumption of adverse user attached upon a showing of continuous use for twenty years. The presumption is, of course, subject to being contradicted or explained. There is no contradiction in this case because it is conceded that the use was made. It is claimed by the defendant, however, that the use has been explained in such a fashion as to rebut the presumption of initial adverse user.

It is asserted that the property was originally of very little use to Pleasants, and that passage over it would very likely not be contested. It is established that C. R. Smith and Pleasants were friends and neighbors, who lived in a very close social and business relationship. It is our conclusion that neither friendship nor close social relations of the owner and initial user can be effective to rebut the presumption. Such evidence may indicate acquiescence, but it plainly falls short of proving a permission acted upon by Smith. Mere acquiescence at the commencement of a use would not affect its adverse character.

The contention is further made that Pleasants was a lawyer, knew his rights, and would hardly let a valuable piece of property be incumbered with prescriptive rights without taking steps to protect himself. This testimony we likewise regard as of no materiality. Failure to object or to take action to protect one's property from the trespasses of others is not ordinarily grounded upon an ignorance of right but rather upon neglect or indifference, and the right to exclude persons from one's property is a fact generally known to laymen. This testimony, if given any force at

all, would merely show acquiescence upon the part of Pleasants in Smith's use of lot 20, and this would be immaterial.

The same comment may be made upon the contention that the use of lot 20 was not injurious or detrimental to Pleasants, and that therefore he would not be likely to object to the use.

It is contended, and the record warrants the contention, that the defendant was making a permissive use of lot 20 because she had offered to purchase the lot before making improvements upon the driveway, and that she put a hedge upon lot 20 with permission of Pleasants. It is argued from the fact that permission was given to the defendant, that permission probably was also given to Smith. We see no materiality in any of the evidence having to do with the relations between Pleasants and the defendant. In the first place, it furnishes no basis for an inference that because permission was given to her it was given to Smith, and certainly none for the further inference that Smith was acting under this permission rather than adversely. It is claimed further that building the sidewalk, heretofore referred to, did not unequivocally show the character of the user. *Guse v. Flohr,* 195 Wis. 139, 217 N. W. 730; *McNeill v. Chicago & N. W. R. Co.* 206 Wis. 574, 240 N. W. 377. While this may be true, it is equally certain that the equivocal character of such conduct has no tendency to prove that the use was permissive.

It is further claimed that one of the plaintiffs, Mowry Smith, disclaimed by his testimony any intent to make an adverse user of lot 20. Mr. Smith was asked:

"*Q.* In your lifetime, Mr. Smith, did you or any members of your family make any use of lot 20 with an intention to deprive someone else of the full use of it? *A.* It never entered my head.

"*Q.* So far as you know, did it ever enter anybody else's head in your family? *A.* Not that I know of.

"*Q.* Did you ever talk with any one about the ownership of lot 20 or the right to use lot 20? *A.* No.

"*Q.* Do you know that your father ever did? *A.* No, I don't.

"*Q.* Do you remember of your father ever saying anything about using that against somebody else's interests? *A.* No.

"*Q.* Or any member of your family? *A.* No, I never heard them mention it.

"*Q.* Then so far as you can remember back the use of lot 20 was the use that was more convenient than some other way out of the land, was it not? You used it because it was more convenient? *A.* Yes, sir, I think we used it because it was more convenient.

"*Q.* And during the use referred to was there any attempt, so far as you know, to impose upon the owner of the land? *A.* It never entered my head."

In so far as this testimony is relied upon to characterize the initial use of this property, it is obviously of no effect. The witness clearly knew nothing of the circumstances under which his father commenced the use, and testified to nothing but his ignorance in that respect. In so far as it may be urged as indicating that the use of the property by the children of Smith was not adverse in character, we think it also ineffective. Certainly it does not bind the other plaintiffs. Furthermore, it merely amounts to a statement that they continued the use that had formerly been made, without any thought about the rights of others, or without any intention of imposing on others or doing more than serving their convenience. It is obvious that such testimony does not characterize the user as permissive. The fact that plaintiffs had no particular intention of imposing upon the owner of the land or interfering with the use of the land by others, seems to us to be wholly immaterial. No doubt they did not consider that they were putting any particular burden upon the owner or any one else, but they did intend to use the lot for their convenience, and they did so openly, noto-

riously, and, so far as the evidence discloses, without permission. This is enough to constitute adverse user.

Many other facts are set forth by defendant as evidence of the permissive character of plaintiffs' user. To discuss all of these in detail would unduly extend this opinion without performing a useful judicial service. They have all been considered, and we have concluded that they are not sufficient to rebut the presumption of adverse user.

It is the conclusion of the court that the rule of the *Carmody Case* applies to the property in question; that there having been a user of the right of way for a period of twenty years or more, this was presumptively adverse. It is further concluded that there is no evidence in the record which rebuts this presumption of adverse user, or so explains it as to deprive plaintiffs of the benefit of the easement.

It follows that the judgment must be reversed.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in accordance with the demand of the complaint.

FAIRCHILD, J. (*dissenting*). I agree with the general principles of law announced as governing cases where ownership of property is acquired by adverse possession. But I disagree with the majority of the court in their application of those principles to the facts in this case.

The decision erroneously relieves the appellants of the burden of establishing the elements, the existence of which is essential to adverse ownership. The use by appellants and predecessors began under conditions amounting to a consent by the owner and made the original use a permissive one. The owner never changed his attitude, nor did the users who were allowed wide privilege. The owner never received any notice that the users were claiming to be the owners of the

land now in dispute. The owner continued the neighborly and friendly attitude of permitting the use by appellants and predecessors of the strip of land as a playground and passageway, permitted them to improve the passageway for their convenience, and that is the most that ought to be said concerning the matter. Even though the character of the surrounding neighborhood began to change years ago, from the evidence quoted in the majority opinion neither appellants nor owner ever thought because of anything occurring on the premises title to property was being affected. I think the judgment of the circuit court should have been affirmed.

I am authorized to state that Mr. Justice FRITZ joins in this dissent.