Lindokken, Respondent, vs. Paulson, Appellant.

*March 10—April 7, 1937.*

472

For the appellant there was a brief by *Hill, Beckwith & Harrington* of Madison, and oral argument by *John T. Harrington.*

For the respondent there was a brief by *J. L. Steensland* of Blanchardville, and *O. A. Stolen* of Madison, and oral argument by *Mr. Stolen.*

ROSENBERRY, C. J. It appears without dispute from the evidence that the parties to this action and their respective predecessors in title were neighbors, friendly, and on good terms, until a short time prior to the commencement of this action; that for nearly fifty years no question was raised as to the character of the use which the plaintiff made of the way in question. The record is barren of any evidence that plaintiff or his predecessor in title ever asserted any right to the way in question other than such as may be deduced from the fact that the way was used not only for transporting milk to the factory but for ingress and egress to and from the plaintiff's farm for all farming purposes and for travel by people residing thereon.

The question therefore presented in this case is whether or not a use by the plaintiff of the way in question for purposes

other than those specified in the grant of itself operated to bring home to the defendant the fact that the plaintiff was claiming a right to do so in hostility to the interests of the defendant. There is no doubt from the record that the defendant and his predecessor in title must have been aware of the fact that the way was being used for purposes other than transportation of milk to the cheese factory. We search in vain for any evidence that a right to so use the way was ever claimed on any ground. It was apparently a practice which grew up from the time of the making of the permit. The parties apparently continued to use the way in question as it had been used theretofore. No attempt was made by the defendant or his father to restrict it to the transportation of milk, and no right was asserted by plaintiff and his predecessor on the other hand. Thus, there is presented for decision here a very narrow question. From these facts the trial court deduced the conclusion that the use of the way made by the plaintiff was not under the license or permission granted; that such use manifested to the defendant and his predecessor in title a clear intent on the part of the plaintiff that the way was being used adversely, and that such use constituted unmistakable notice that it was adverse and under a claim of right and not pursuant to the license or permit. The trial court deduces this conclusion, not from any evidence which shows that the use made was a different use than that granted, but from the fact that the use was for a different purpose. The question then comes down to this, Where a way is granted for a use for a particular purpose and the way is used for that and other purposes, is the use permissive or adverse and hostile, and, if so, is the owner of the servient estate charged with knowledge by reason of that fact alone that such use is adverse and hostile?

There can be no doubt but that the instrument given by Ole Paulson to Lars O. Lindokken permitted the plaintiff and his predecessor to enter upon the premises. The mere act of

entry therefore could not have been adverse or hostile, but must be held to be permissive. Being lawfully upon the premises, Does the fact that the plaintiff and his predecessor in title use the way for a different purpose than that specified in the permit indicate any hostile intent on the part of the plaintiff, or is such enlarged use to be referred to the permissive right of the plaintiff to enter? The law is very rigid with respect to the fact that a use permissive in the beginning can be changed into one which is hostile and adverse only by the most unequivocal conduct on the part of the user. The rule is that the evidence of adverse possession must be positive, must be strictly construed against the person claiming a prescriptive right, and that every reasonable intendment should be made in favor of the true owner. *Meyer v. Hope* (1898), 101 Wis. 123, 77 N. W. 720; *McNeill v. Chicago & N. W. R. Co.* (1932) 206 Wis. 574, 240 N. W. 377; *Naporra v. Weckwerth* (1929), 178 Minn. 203, 226 N. W. 569, 65 A. L. R. 124; *Sachs v. Toquet* (1936), 121 Conn. 60, 183 Atl. 22, 103 A. L. R. 677. The difficulty with the plaintiff's case here is that there is no act from which hostility to the interests or rights of the defendant as the owner of the servient estate can be inferred. In general, the hostile and adverse character of the user necessary to establish an easement by prescription is the same as that which is necessary to establish title by adverse possession. *Naporra v. Weckwerth, supra; Guse v. Flohr* (1928), 195 Wis. 139, 217 N. W. 730; 196 Wis. 565, 221 N. W. 110.

It does not appear from the evidence that any use made by the plaintiff of the way in question in any way impaired the rights of the defendant in the enjoyment of his rights as the owner of the servient estate. The way used was no wider, gates were maintained in one instance as in the other.

In *Curtis v. La Grande Hydraulic Water Co.* (1890) 20 Or. 34, 23 Pac. 808, 810, 25 Pac. 378, 10 L. R. A. 484, it appears that water had been taken from a stream under a

license granted by one Arnold in 1865. The controversy arose about 1890. In determining whether the permissive use had become hostile and adverse, the court said:

"To acquire a right of prescription in the lands of another upon the presumption of a grant, the possession must be adverse, continuous, uninterrupted and by the acquiescence of the owner of the land upon which the easement is claimed. If its inception is permissive or under a license from the owner, it cannot avail to work an ouster. To effect that result, the possession taken must be open, hostile and continuous,—'he must unfurl his flag on the land, and keep it flying, so that the owner may see, if he will, that an enemy has invaded his domains, and planted the standard of conquest.' Under this rule, an adverse possession cannot grow out of a permissive enjoyment."

In *Scheller v. Pierce County* (1909), 55 Wash. 298, 104 Pac. 277, 278, a license had been granted to use certain premises as a public way for a term not exceeding five years. The road had been used by all persons desiring to travel the same for eighteen years. The land had been used after the expiration of the five years in the same way that it had before. The question was whether the use after the five-year period for which the license was granted was hostile and adverse. The court said:

"There was clearly no adverse holding during the period covered by the written contract, and nothing transpired after that time to convert the permissive use into an adverse use, except mere lapse of time,"—

and approved the following declaration of the law:

"If permissive in its inception, then such permissive character being stamped on the use at the outset, will continue of the same nature and no adverse user can arise until a distinct and positive assertion of a right hostile to the owner, and brought home to him, can transform a subordinate and friendly holding into one of an opposite nature, and exclusive and independent in its character,"

It has been said that it is essential that there be such an invasion of the rights of the owner of the servient estate that he would have a cause of action against the intruder, and that the prescriptive period does not commence to run until there is such an invasion. 9 R. C. L. p. 777, cases cited note 4.

In *Smith v. Russ* (1863), 17 Wis. *227, *229, a dam had been maintained for over twenty years. During the first ten years the lands of the plaintiff had not been flooded. During the last ten years they had been flooded. The dam having been maintained at a uniform height, the question was, When did the statute begin to run? The court said:

"It is obvious that the statute of limitation did not begin to run upon the plaintiffs' claim until their lands were flowed. Before that they had no action; and it was wholly immaterial whether the dam had been built a long or a short time. . . ."

Under what circumstance an entry is permissive was dealt with in *Shepard v. Gilbert* (1933), 212 Wis. 1, 249 N. W. 54. It is not necessary to repeat here what was said there. While there is a statement in the opinion to the effect that it was immaterial whether use made of the premises in question was or was not injurious or detrimental to the owner, it is apparent that what was said did not refer to the character of the use made after entry but with reference to entry itself. In that case it was held that the entry was hostile and adverse.

The plaintiff claims, and quite correctly, that an easement for a specified purpose may be enlarged by subsequent adverse user. 9 R. C. L. p. 778, and cases cited. The cases which the plaintiff cites to maintain his position are, however, based upon a very different state of facts than those presented in this case. In *Wheatley v. Chrisman* (1855), 24 Pa. 298, the defendant had a right by deed from an upper proprietor to take water from a stream for the purposes of irrigation. For more than twenty-five years the defendant had used the water for his horses and cattle. In this case there was a consump-

tion and taking which clearly diminished the rights of the plaintiff; it having been continued with his knowledge for the requisite length of time, a prescriptive right arose.

In *Gehman v. Erdman* (1884), 105 Pa. 371, the defendant had a right under a grant to raise water in a stream to a certain height. He raised it an additional four inches, which of course resulted in the possession of the plaintiff's land by overflow, which was a clear invasion of the plaintiff's rights. So it has been said that where a way is granted or reserved for foot passengers and has been used for the requisite time as a carriageway, the right to use it as a carriageway will be established by prescription. Such a user, however, would turn a path into a roadway and diminish the rights of the owner of the servient estate. In cases of that kind where there is an additional taking, it may well be that a declaration of hostility and that the premises are being used adversely is made by mere user. No such facts are present in this case. Here there was no increase in the width of the way. The rights of the defendant were in no way impaired or diminished. Certainly, no "flag was unfurled" and no other evidence of hostility given. The entry of the plaintiff and his predecessor in title being under permit, the use which was made was referable to the permit. It did not become hostile or adverse until the plaintiff brought home to the defendant the fact that he was no longer acting under the permit. Mere user in the accustomed manner did not do that. Upon reason and authority it is held that such use as plaintiff and his predecessor in title made of the way was permissive and they acquired no rights by user hostile and adverse to those of the defendant.

*By the Court.*—Judgment appealed from is reversed, and cause remanded with directions to dismiss the complaint.