MARTIN and wife, Respondents, vs. MEYER, Appellant.

*September 17—October 13, 1942.*

220

*J. E. O'Brien* of Fond du Lac, for the appellant.

For the respondents there was a brief by *Laus & Cook* of Oshkosh, and oral argument by *Leonard J. Cook*.

MARTIN, J. Plaintiffs are the owners of lot 24, block 57, in Ford's Addition in the Fourth ward of the city of Oshkosh. The defendant Emma C. Meyer is the owner of lot 23 in said block. Plaintiffs acquired title to their lot by conveyance from Otto B. Krippene and Julia E. Krippene on April 6, 1921; Krippenes having acquired their title to said lot on September 29, 1906. The defendant Emma C. Meyer acquired title to her lot from Elizabeth M. Jones on October 23, 1929. Mrs. Jones had owned lot 23 prior to 1922, and in 1922 she conveyed the lot to George H. Stevens. Stevens occupied the premises until sometime in 1928, and on October 2, 1929, he reconveyed to Mrs. Jones.

The driveway is sixteen and one-half feet in width. It is conceded that twelve and one-fourth feet are on the defendant's lot and four and one-fourth feet on the plaintiffs' lot. The driveway is surfaced with cinders and ashes. In 1924 Martin and Stevens, each contributing labor and material, constructed a cement approach from the street over the curb to this driveway. The plaintiff Arthur L. Martin testified:

"A part of the cement approach is in front of my property. When we built the approach, I did not know where the lot line was there definitely. It was not marked out. When I built the garage, I did not have the line surveyed, and haven't had it surveyed since. I didn't know where the line was. I don't know where it is now. The tenant on the lot to the north [lot 23] drove over the same driveway and over a part of my land, and I drove over a part of his land. Neither of us made any objections. The front of my property facing the street is fifty-eight feet wide. The house is thirty or thirty-two feet wide. The only obstacle to my having a driveway on the south side of my house in the twenty-six feet of my lot unoccupied by the house is one tree eight or ten inches wide, some shrubs and a garden, and the sidewalk."

Otto Krippene, the plaintiffs' predecessor in title, testified:

"During the time I owned those premises, neither myself or any of my tenants had no horse and buggy or vehicle. The

only occasion I had to use the driveway was to bring in fuel. The tenants to the north used the driveway for the same purpose and also for keeping horses and vehicles in their barn. They also brought hay over that driveway to the barn. I never objected to their using any part of the driveway, and they never objected to my using any part of the driveway. We were good neighbors. I did not know where the lot line was, and I always had an idea that I had plenty driveway. The driveway was used without reference to where the lot line was by everybody who had occasion to use it. I never put up any fence or barrier to claim any part of that driveway. *I never made any claim to it by reason of my right of travel over there."*

Krippene and Arthur L. Martin were the only witnesses who testified in behalf of plaintiffs. George H. Stevens testified in part as follows:

"At the time I came there in 1922, the driveway was such that a car couldn't get in there. It was so muddy and out of repair. I hauled in cinders and ashes and everything and filled the driveway up. Mr. Martin did nothing to repair the driveway as far as I know. Mr. Martin asked me about fixing up the driveway—going together and fixing it up, and I should give him a joint driveway. I said, 'No,' and then he said, 'I will buy some,' and I said, 'No.' That was in 1922. We had a little dispute, and I told him he couldn't drive over that driveway, and his tenants did not drive over it until we had the matter settled, by my giving him permission to drive in and out as long as he was a good neighbor. That was about the time he remodeled his house in 1924. When I forbid his tenants to drive over that driveway, they stopped driving until Mr. Martin and I settled it. I told him he could use it (driveway) as long as he was a good neighbor; otherwise he couldn't. Mr. Martin contributed nothing to the improvement of the driveway—just the entrance."

Mr. Stevens further testified:

"The argument I had with Mr. Martin was after 1924. He complained of some noise at our house at a party. I then told him to 'stay on your side, and I'll stay on mine.' Then

I forbid his tenants to drive out, and I told him he couldn't drive over it. I told him to keep off my land. His garage was built at that time. They did not drive over the driveway for a time. Afterward, Mr. Martin drove in at night. We talked it over the next day. I told him I was going to put a fence on the line. He said, 'No, we can just as well be good neighbors.' I said, 'Just as long as you are a good neighbor, you can drive in and out; otherwise, you can't.' After that, we got along all right, the rest of the time I was there."

Mrs. Stevens testified to the conversation between her husband and Mr. Martin about the driveway. She testified that Mr. Martin wanted her husband to sell him a portion of the driveway; that her husband refused; that then Mr. Martin asked him to make it a joint driveway, and that her husband replied, "it would depreciate the value of the property." She further testified that Mr. Martin was under the impression that her husband was going to put a fence through the driveway, and Martin pleaded with him not to do so.

In rebuttal Mr. Martin testified:

"I don't recall having a conversation with Mr. Stevens in which I asked him to make a joint driveway of this place. I don't know of offering to buy any property from him."

The defendant Emma C. Meyer testified:

"The first conversation I had with Martins about the driveway was Mrs. Martin asked me if I would fix up my part of the driveway if they would fix up their part. That was in 1929. Afterwards, Mr. Martin came over and asked me, and said he would give $70 for one foot of my driveway. I think that was about in 1932 or 1933. I told him I didn't want to sell."

In 1932 or 1933 Mrs. Meyer made a demand on Mr. Martin that he pay rent for the use of that part of her property included in the driveway. Mr. Martin admits that such demand was made and further admits that subsequent to the demand for rent he offered to purchase a part of the driveway prop-

erty in lieu of paying rent. In 1938 Mrs. Meyer put a fence along the lot line between lots 23 and 24, extending from the back end of said lots to the front. The judgment entered herein directed the removal of said fence.

The trial court based its decision on the holding of this court in *Carmody v. Mulrooney,* 87 Wis. 552, 58 N. W. 1109; *Wegner v. Erffmeyer,* 193 Wis. 212, 213 N. W. 472; *Kieffer v. Fox,* 193 Wis. 361, 214 N. W. 441; and *Shepard v. Gilbert,* 212 Wis. 1, 249 N. W. 54. The rule in these cases is that when it is shown that there has been the use of an easement for twenty years unexplained, it will be presumed to have been under a claim of right and adverse, and will be sufficient to establish a right by prescription and to authorize the presumption of a grant, unless contradicted or explained. The trial court found that the part of lot 23 within the driveway area "has been used by the plaintiffs and their predecessors in title, and by their families and guests and tenants, continuously, uninterruptedly, openly and notoriously under claim of right and with the knowledge and acquiescence of the owners of said lot 23 for more than twenty years prior to the commencement of this action."

In *Lindokken v. Paulson,* 224 Wis. 470, 475, 272 N. W. 453, the court said:

"In general, the hostile and adverse character of the user necessary to establish an easement by prescription is the same as that which is necessary to establish title by adverse possession." Citing *Naporra v. Weckwerth,* 178 Minn. 203, 226 N. W. 569, 65 A. L. R. 124; *Guse v. Flohr,* 195 Wis. 139, 217 N. W. 730; 196 Wis. 565, 221 N. W. 110.

There is also applicable the further rule that the evidence of adverse possession must be positive, must be strictly construed against the person claiming a prescriptive right, and that every reasonable intendment should be made in favor of the true owner. *Lindokken v. Paulson, supra,* p. 475, and cases cited.

It is significant that the plaintiffs and their predecessor in title testified that during all the years they owned and occupied lot 24 they did not know where the true lot line was between lots 23 and 24. Mr. Krippene, who purchased lot 24 in 1906, and who occupied the residence thereon from 1912 or 1913 until he sold the property to the plaintiffs in 1921, testified that he never made any claim to the driveway by reason of his right to travel over it. The use of the driveway appears to have been by the common consent of the owners and occupants of the two lots, for more than twenty years. It was a permissive user and no matter how long continued it could not ripen into an easement by prescription. *Wiesner v. Jaeger,* 175 Wis. 281, 286, 184 N. W. 1038; *Shepard v. Gilbert, supra,* p. 7. All reasonable presumptions are made in favor of the true owner in case of a claim by adverse possession, including the presumption that actual possession is subordinate to the right of the true owner. *Illinois Steel Co. v. Budzisz,* 106 Wis. 499, 81 N. W. 1027, 82 N. W. 534; *Bettack v. Conachen,* 235 Wis. 559, 566, 294 N. W. 57.

The evidence on the part of the plaintiffs falls far short of establishing an easement by prescription. The findings of the court below are clearly against the great weight and clear preponderance of the evidence, and must be set aside.

*By the Court.*—Judgment reversed. Cause remanded with directions to enter judgment dismissing plaintiffs' complaint.