CARLSON, Appellant, vs. CRAIG, Respondent.*

*September 9—October 6, 1953.*

* Motion for rehearing denied, without costs, on December 1, 1953.

For the appellant there was a brief by *Douglas & Omernik* of Spooner, and oral argument by *W. W. Bitney* of Shell Lake.

For the respondent there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *Warren P. Knowles III*.

BROADFOOT, J.   In 1895 F. E. Carlson, the father of the plaintiff, located upon a farm in the town of Siren, in Burnett

county. At that time he lived upon the east side of Clam lake. When he arrived, there was a road which was referred to throughout the trial as "the old tote road." This road lead from some unnamed place to the north in a southerly direction across the lands now owned by the defendant, across lands now owned by the plaintiff, and continued on to the village of Siren. The plaintiff was born upon his father's farm and apparently lived with him until he was married in 1924, and probably until he built his own home in 1925.

In 1920 F. E. Carlson built a new home on the west side of Clam lake. The record shows that F. E. Carlson and the plaintiff used the tote road, which was on the west side of Clam lake, for hauling the produce of the farm to market and for hauling supplies from the market to the farm. In 1920 all of the materials for the building of the house were hauled over this tote road and across land now owned by the defendant. They continued to use this road across said land from that time on. When the plaintiff was married, his father gave him 27 acres of land, and he purchased 120 acres adjacent thereto.

A mail carrier used the tote road as a rural mail route from 1920 until 1928, traveling from State Trunk Highway 70, to the north of defendant's property, in a southerly direction to the farm of the plaintiff and beyond. The record discloses that minor repairs were made to the road across defendant's land, at least after the year 1920, by the plaintiff and his father.

In 1916 one Babcock received a patent from the United States government to the land now owned by the defendant. He constructed a house thereon, which is still standing. He cleared a small amount of said land and at least planted fruit trees upon a portion thereof. There is some testimony that some grain was raised thereon. The record is silent as to the use of the Babcock property from 1916 to 1944, when the defendant and her husband purchased approxi-

mately 11 acres from a bank at Grantsburg. Included therein were eight acres lying south of old Highway 70.

Sometime prior to 1944 Highway 70 was relocated, and instead of running east and west across the north boundary of the eight-acre tract, it curved to the northeast. Approximately three acres of defendant's land are located between Highway 70 as now located and as it was originally laid out. A portion of the old highway still runs in a westerly direction from defendant's land to Highway 70 as now laid out. The disputed right of way crosses the eight-acre tract. At the time of the trial the plaintiff was still using that portion of the old tote road extending from his farm buildings northerly to old Highway 70, thence west to new Highway 70.

In 1928 or 1929 the plaintiff plowed up and fenced off that portion of the old tote road running westerly and southwesterly to the village of Siren. The town board laid out a new town road running east and west across the southerly line of plaintiff's farm and running north and south along the west line of plaintiff's farm, and his mailbox is located upon said town road west of his buildings. This town road was laid out and graded somewhere between 1922 and 1928.

The defendant testified that in 1944 and annually thereafter the plaintiff asked permission to continue to use the road across her property. He denied asking such permission. However, the trial court made a specific finding that he did so, and that stands as one of the facts in this case.

The defendant erected "No trespass" signs about the year 1950. The plaintiff continued to use the road and started this action to enjoin the defendant from closing the same.

The trial court concluded that the portion of the original Babcock homestead owned by the defendant is an uninclosed wooded area and that the rule laid down by this court in the case of *Bassett v. Soelle*, 186 Wis. 53, 202 N. W. 164, applies. The plaintiff contends that the facts before us call for

the application of the rule laid down in *Carmody v. Mulrooney,* 87 Wis. 552, 554, 58 N. W. 1109, where this court said:

"When it is shown that there has been the use of an easement for twenty years, unexplained, it will be presumed to have been under a claim of right and adverse, and will be sufficient to establish a right by prescription, and to authorize the presumption of a grant, unless contradicted or explained. In such a case the owner of the land has the burden of proving that the use of the easement was under some license, indulgence, or special contract inconsistent with the claim of right by the other party."

In the *Bassett Case, supra,* all of the land involved was uninclosed woodland. In that case the defendant's predecessor lived several miles from his property and had crossed the plaintiff's land to his own only in the winter for the purpose of getting wood. In that case the defendant did not claim an unrestricted easement but only the right to pass over the plaintiff's land over a winding, irregular track for the purpose of getting wood. There was no evidence in that case that anyone had worked on the trail in question or exercised any acts of dominion over it. It was there held that the mere use of a passageway through uninclosed lands, especially woodland, will not raise the presumption that the use is under a claim of right. An endeavor was made to limit the rule in the *Carmody Case, supra,* to lands actually inclosed, and that distinction was applied in some later cases. However, the matter was reconsidered in the case of *Shepard v. Gilbert,* 212 Wis. 1, 249 N. W. 54, and it was there held that the test of whether the land was inclosed or uninclosed was not satisfactory.

In the *Shepard Case,* while referring to the *Bassett Case,* this court said (p. 6):

"We think the rule cannot be applied either to urban property or to property which is either improved or in the

process of being improved, whether for use as agricultural lands or as city property."

In the *Shepard Case* the court further explained that the wild land mentioned in the *Bassett Case* meant "unimproved property largely in a state of nature."

Again in *Christenson v. Wikan,* 254 Wis. 141, 35 N. W. (2d) 329, this court said (p. 143):

"A careful examination of the testimony convinces us that this is a case of the unexplained use of this property by defendants and their predecessors in title at least from 1916 to July, 1947. The case is therefore ruled by *Shepard v. Gilbert,* 212 Wis. 1, 249 N. W. 54, which held that in the case of property which is either improved or in the process of being improved, whether for use as agricultural land or city property, the rule of *Carmody v. Mulrooney,* 87 Wis. 552, 58 N. W. 1109, applies. See also *Martin v. Meyer,* 241 Wis. 219, 224, 5 N. W. (2d) 788, where it was said, 'When it is shown that there has been the use of an easement for twenty years unexplained, it will be presumed to have been under a claim of right and adverse, and will be sufficient to establish a right by prescription and to authorize the presumption of a grant, unless contradicted or explained.'"

It is apparent that the plaintiff traveled over the property now owned by the defendant for more than twenty years prior to the time the defendant purchased the same in 1944. It is undisputed that he and his father cut grass and brush and made improvements to the roadway. It is apparent, too, that beginning in 1916 the property was improved or in the process of being improved for agricultural purposes. A portion thereof was cleared and fruit trees were set out. Perhaps only the minimum requirements of the Federal Homestead Act were performed. It is well known, however, that after entry upon government land and before a patent will issue certain improvements must be made.

The use thereof for more than twenty years by the plaintiff thus raises the presumption that his use was adverse and

unless the same was explained or shown to be permissive by the defendant, the plaintiff has acquired the right to continue his use of said roadway across defendant's lands.

It is contended by the defendant that when plaintiff asked permission in 1944 and subsequent years to use the road it demonstrates that his use thereof had been permissive at all times. Such an inference might be warranted were it not for other facts disclosed by the record. The defendant attempted to close the road by putting brush across the same. The plaintiff removed the obstruction. He continued to improve the road and to exercise dominion over it to such an extent that in 1952 the defendant asked the town board to close the highway. It is equally consistent to determine that the plaintiff was not relying upon permission granted by the defendant but was asserting rights that were established prior to the time the defendant acquired her property. No explanation of the use of the roadway prior to 1944 was offered by the defendant.

The defendant also calls attention to sec. 330.12 (2), Stats., which was enacted in 1941. This court met the same argument in the *Christenson Case, supra,* as follows (p. 144) :

"Since sub. (2) was inserted as a subsection to sec. 330.12 it is arguable that it was intended to relate to the same subject matter as sub. (1), that is, maintenance of overhead wires. However, we need not decide this point since sub. (2) applies only to unenclosed land which is defined in the *Bassett Case, supra,* as wild and unimproved land. Furthermore, the enactment in 1941 could not affect the prescriptive rights acquired by an adverse user beginning in 1916 because those rights were already vested by that time."

The rule enunciated in the *Carmody Case* is the general rule in Wisconsin. When the plaintiff proved an unexplained use of the roadway for more than twenty years the presumption arose in his favor. The defendant attempted to show that she came within the exception to that rule as it was

stated in the *Bassett Case,* which was modified in the *Shepard Case.* This she failed to do. The record will support only the conclusion that the land was improved or partially improved for agricultural purposes and cannot be called unimproved property largely in a state of nature.

*By the Court.*—Judgment reversed and cause remanded with directions to enter a judgment consistent with this opinion.