SHELLOW and others, Respondents, v. HAGEN, Appellant.

*February 3—March 8, 1960.*

508

For the appellant there was a brief and oral argument by *Louis C. Ritter* of Milwaukee.

For the respondents there was a brief and oral argument by *Clayton A. Cramer,* attorney, and *A. Warren Cahill* of counsel, both of Waukesha.

HALLOWS, J. The main issue on this appeal is whether the plaintiffs have proven an easement by prescription to the use of the parking lot. The defendant contends the evidence fails to establish such an easement because the use was not adverse for twenty years, was not continuous and uninterrupted, and was permissive. The law of easements has been the subject of many decisions by this court, and the rule was well stated in *Carmody v. Mulrooney* (1894), 87 Wis. 552, 554, 58 N. W. 1109:

"When it is shown that there has been the use of an easement for twenty years, unexplained, it will be presumed to have been under a claim of right and adverse, and will be sufficient to establish a right by prescription, and to authorize the presumption of a grant, unless contradicted or explained. In such a case the owner of the land has the burden of proving that the use of the easement was under some license, indulgence, or special contract inconsistent with the claim of right by the other party."

The rule so enunciated has been followed and was lately approved in *Carlson v. Craig* (1953), 264 Wis. 632, 60 N. W. (2d) 395; *Carlson v. Dorsch* (1956), 274 Wis. 22, 79 N. W. (2d) 99; and *Red Star Yeast & Products Co. v.*

*Merchandising Corp.* (1958), 4 Wis. (2d) 327, 90 N. W. (2d) 777.

This rule is based upon the "lost grant" theory originating in England because easements, being incorporeal hereditaments, could be created only by grant, and the statute of limitations applied only to actions to recover land. From long possession and exercise of the right by the claimant with the acquiescence of the owner of the land, the court presumed that there must have been originally a grant by the owner to the claimant which became lost. The court enforced the fiction, not because it believed any presumed grant was made, but because of public policy and convenience. 17A Am. Jur., Easements, p. 677, sec. 66.

The method by which a prescriptive easement is acquired is analogous to the method by which title is obtained by adverse possession. Relying on *Lindokken v. Paulson* (1937), 224 Wis. 470, 272 N. W. 453, and *Martin v. Meyer* (1942), 241 Wis. 219, 5 N. W. (2d) 788, that the adverse and hostile character of the use necessary to establish an easement by prescription is the same as that which is necessary to establish title by adverse possession, and that such evidence must be strictly construed against the plaintiffs, the defendant argues that the character of the use does not meet the standards of adverse possession stated in *Bettack v. Conachen* (1940), 235 Wis. 559, 294 N. W. 57. The easement claimed by the plaintiffs lies in the use they made, not in their adverse possession, of the property. Possession, or an intention to possess as one's own, is not a prerequisite to the creation of an easement. Claim of title is not necessary, and the use need not be to the exclusion of the owners. Hostile use is not an unfriendly intent and does not mean a controversy or a manifestation of ill will. An act is hostile when it is inconsistent with the right of the owner and not done in subordination thereto. The analogy

to adverse and hostile possession does not mean that the acts of the claimant must be identical in both adverse possession and easements by prescription but must be similar, taking into account the difference in the physical nature of the acts of possession and use.

The rule governing the creation of easements is stated in Restatement, 5 Property, p. 2923, sec. 457, as follows:

"An easement is created by such use of land, for the period of prescription, as would be privileged if an easement existed, provided the use is (a) adverse, and (b) for the period of prescription, continuous and uninterrupted."

The concept of adverse use includes a use which is wrongful or may be made wrongful by the owner, is open and notorious, and not made in subordination to the right of the owner. The use need not be exclusive or inconsistent with the rights of the owner so long as the particular use is made in disregard or nonrecognition of the true ownership. The owners' and their predecessors' use of the lot in erecting a pier for their boats and in connection with fishing and swimming was not inconsistent with the plaintiffs' particular use of such land. The first act of the defendants in attempting to interfere with the plaintiffs' use was in 1950, after twenty years had run, when the defendants posted a sign, "Parking, 25¢," which fee no one paid.

The defendant contends that the plaintiffs' use was not continuous and uninterrupted. Continuity depends on the nature and the character of the right claimed. Such acts need not be constant, daily, or weekly. The use of the parking lot by the plaintiffs only called for the parking of cars and the mooring of boats when they used their property on Sugar island, and for the storage of their boats in the fall and winter. The plaintiffs' need determined the use which was continuous in the light of those periodic needs throughout the prescriptive period. Their failure to use the

parking lot for all purposes when not needed does not disprove the continuity of use when needed. There is no evidence that the plaintiffs ever intended not to use the land when the need arose.

The plaintiffs' use was sufficiently definite to constitute a basis for an easement by prescription. The degree of definiteness of the easement is determined by the nature and extent of the right asserted. In the *Red Star Yeast & Products Co. Case, supra,* this court said (p. 340):

". . . so far as the plaintiffs' use is concerned, they have by prescription the right 'to continue to do the things the doing of which resulted in the creation of the easement'—no more and no less."

In Restatement, 5 Property, p. 2910, sec. 450, comment *m,* it is stated:

"Some degree of definiteness in the scope or extent of an interest is essential to its recognition as a property interest. . . . The required degree of definiteness varies to some extent with the novelty of the particular use."

The use by the plaintiffs was open, visible, and notorious. There was some evidence that on occasions when the witnesses for the defendant went swimming they did not see any use by the plaintiffs of the parking lot. Such evidence does not meet the great-weight-and-clear-preponderance test necessary to reverse findings of the trial court.

The defendant claims that the use was not adverse but permissive because the property was uninclosed and in a wild state and relies on sec. 330.12 (2), Stats., and *Bassett v. Soelle* (1925), 186 Wis. 53, 202 N. W. 164. This section, enacted in 1941, providing that "the mere use of a way over uninclosed land shall be presumed to be permissive and not adverse," was held in *Christenson v. Wikan* (1948), 254 Wis. 141, 35 N. W. (2d) 329, to apply only to uninclosed land which had been defined in the

*Bassett Case* as wild and unimproved land. While the record shows that the shore along the defendant's property was weedy and shallow, the defendant's land has been occupied and used continuously for the period in question and cannot be said to be wild and unimproved in a wild and undeveloped region. The *Bassett Case,* involving an uninclosed woodland, was considered an exception to the general rule laid down in the *Carmody Case, supra.* The scope of the exception was reconsidered in *Shepard v. Gilbert* (1933), 212 Wis. 1, 249 N. W. 54, and the test of whether the land was inclosed or uninclosed was stated to be unsatisfactory. The *Bassett Case* doctrine of presumed permissive use was restricted to land in those localities where there was unimproved property largely in the state of nature and in such form as to make it customary for the public, for purposes of convenience and pleasure, to pass through it without permission. This modification was pointed out and approved in *Carlson v. Craig, supra.* Such are not the facts here. Neither can we infer that because the plaintiffs were neighbors of the defendants and their predecessors in title, the use made by the plaintiffs was permissive. A presumption of permission cannot arise merely from the fact that the plaintiffs and the defendants were neighbors. *Red Star Yeast & Products Co. Case, supra.* In *Shepard v. Gilbert, supra,* it was said (p. 11) :

"It is our conclusion that neither friendship nor close social relations of the owner and initial user can be effective to rebut the presumption. . . . Mere acquiescence at the commencement of a use would not affect its adverse character."

It is contended that no easement can be acquired against the defendant because a tenant was in possession for part of the alleged prescriptive period. The difficulty with this argument is that the period of adverse use by the plaintiffs

commenced in 1928 against the owners Kulik who were then in possession until 1933 when a succession of tenants occupied the land. *Pentland v. Keep* (1877), 41 Wis. 490, cited by the defendant, is not in point. In that case the court held no prescriptive easement could be obtained because during the whole period of the use a tenant for years was in possession of the land and the owners were under a legal disability to resist the adverse use without infringing on the rights of the tenant in possession. Here the adverse use, having commenced to run against the defendant's predecessors in title, would not lose its character of being adverse because the property was occupied by a tenant during the latter part of the prescriptive period. 19 C. J., Easements, p. 877, sec. 27; 28 C. J. S., Easements, p. 660, sec. 16; 1 Thompson, Real Property (perm. ed.), p. 734, sec. 448, Easements by Prescription, and cases therein cited; Restatement, 5 Property, p. 2942, sec. 460, comment *c*.

The defendant argues that there is no evidence establishing the use of the premises by all of the plaintiffs and all of the owners on Sugar island. While all the plaintiffs did not testify, the witnesses produced by the plaintiffs testified the plaintiffs and owners in general made the same use of the property. It is not necessary that every owner of property on Sugar island testify as to his use when testimony showed the use made of the parking lot was incidental and appurtenant to the use of all the lots by their owners on Sugar island.

The argument of the defendant that the plaintiffs did not prove their ownership of the lots on Sugar island is based on an alleged error of admitting in evidence a limited abstract of title called an "ownership report." The plaintiffs offered to produce all the necessary records in the register of deeds' office to prove the chain of title and ownership to the 44 lots composing Sugar island. This procedure would

have taken up an unreasonable amount of time in an already busy court to prove a point that was not seriously in dispute. The ownership report was prepared by a qualified abstracter who testified and qualified it as being a correct report of all the conveyances and deeds affecting the plaintiffs' property. It is true that the best-evidence rule requires proof of the contents of a writing by the writing itself but of necessity, in order to prevent a miscarriage of justice, contents of a document may be proved by other means when the writing is unavailable or for some other legitimate reasons it is not possible or feasible to produce the original document. 1 Jones, Evidence (5th ed.), p. 458, sec. 237; 4 Wigmore, Evidence (3d ed.), p. 334, secs. 1192 *et seq.*

The best-evidence rule at common law was preferential and not exclusionary. Its purpose was to prevent fraud upon the trier of the fact, depriving it of the benefit of the original document. Rule 70, "Documentary Originals as the Best Evidence" of the Uniform Rules of Evidence (1953 Handbook of the National Conference of Commissioners on Uniform State Laws, p. 213), provides an exception to the best-evidence rule when the writing is an official record or is a writing affecting property authorized to be recorded and actually recorded in the public records as described in Rule 63, exception (19). We do not believe it was error for the trial court to admit the ownership report in the form of a limited abstract in evidence instead of requiring the production in court of all the deeds or the many volumes of public documents from the register of deeds' office. This evidence was not contradicted by the defendant and stands as the only evidence on the issue of plaintiffs' ownership. No claim was made that the ownership report was incorrect or that the defendant was prejudiced by its admission. Under the circumstances the proof is sufficient.

We cannot agree that the cost of the ownership report was not a proper taxable cost. Sec. 271.04 (2), Stats., allows abstract of title to be taxed as costs. The so-called ownership report is a specialized or limited abstract and contained all the information necessary to the issue. Such ownership reports are now common, and come within the meaning of an abstract of title for the purposes of taxing costs in suits where they are admitted in evidence.

*By the Court.*—Judgment affirmed.