CHICAGO & NORTHWESTERN RAILWAY COMPANY v. STATE, EX REL. JOHN CARR ET AL.

FILED JUNE 8, 1905.  No. 13,781.

1. **Railroads: DISCRETIONARY POWERS.** Railway companies, in the absence of statutory provisions limiting and restricting their powers, are vested with a very broad discretion in the matter of locating, constructing and operating their railways, and in locating, maintaining and discontinuing their freight and passenger stations, and with the exercise of such discretion the courts will not interfere except in cases of its abuse.

2. ———: **DISCONTINUING SERVICE.** It is not an abuse of discretion for a railway company to discontinue, under the circumstances of this case, the employment of a station agent at a country place nearly equally distant, and not more than five to seven miles from three thriving villages where regular railway service is maintained, and where are carried on the mercantile, mechanical and professional businesses usually found in such towns.

ERROR to the district court for Holt county: JAMES J. HARRINGTON, JUDGE: *Reversed and dismissed.*

*Benjamin T. White, James B. Sheean* and *C. C. Wright,* for plaintiff in error.

*M. T. Harrington, contra.*

AMES, C.

This is a proceeding in error to review a judgment of the district court granting a peremptory writ of man-

damus at the suit of two private citizens, compelling the plaintiff in error, a railway company, to continue the services of a station agent at a place on its line in Holt county in this state, called Stafford.

There is no dispute about the facts. The place in question is an unincorporated country neighborhood, having no distinctive name except that given to its station house by the respondent. There are in the immediate vicinity eight buildings, including two owned by the company. Of the remaining six, one is used in part as a dwelling and in part as a store, in which is carried for sale a stock of from three to five hundred dollars in value of general merchandise, and one is a blacksmith's shop and stable. The total population of the village, at the time of this controversy, was about forty persons of all ages, and of whom seven were employees of the company. There is very little passenger business at that point, and the freight traffic there is inconsiderable except for the shipment at certain seasons of the year of live stock and hay. Reasons are obvious. Five and two-thirds miles distant on the company's line in one direction, and seven miles in the other, are the villages respectively of Inman and Ewing, and five miles northward on the line of the Great Northern Railroad is Page. All these places are thriving communities of considerable size, in which are represented all descriptions of business, mercantile, mechanical and professional, usually found in country towns. Relators are not members of the community just described, but are the occupants of farms and ranches situate in its vicinity, and their counsel says in his brief that the proceeding is prosecuted "not merely for the town, but to a greater extent for the farming community," of whom there is, within a radius of four miles from the station, a population of twenty-nine families. A circle having that radius would extend to within two miles from Ewing, and one and two-thirds miles from Inman, and one mile from Page. It is obvious that, from aught that appears in the record, a majority of these twenty-nine families can be accommo-

dated with railway facilities at some of these latter named places equally as well or better than at Stafford. Nearly all the business transacted by the company at the last named station is in car-load lots, for which cars can be ordered and obtained from the section foreman stationed there, and it was not proposed or intended to discontinue the regular stoppage of trains at that place for the receipt and discharge of freight and passengers, but it was thought by the respondent that, during the winter and less busy months, the amount of traffic at that point did not justify the expense of the station agent, and that its patrons would not be seriously inconvenienced by his absence, and it proposed to suspend that functionary for an indefinite time, beginning on the first day of January, 1904. In the preceding month of December the company issued an order to that effect, which was the occasion of this lawsuit.

Counsel for the respective parties agree that no similar case can be found in the books, but the principles by which it is to be decided are, we think, not difficult of discovery, and have not failed of announcement by the courts. The general power to manage and control the business of a railroad company, including to establish, maintain and discontinue freight and passenger buildings and stations and to employ and discharge servants, is administrative in its character and of a discretionary nature, and, in the absence of legislation to the contrary, is vested in the company itself. It is a power which from the very nature of things the courts cannot themselves exercise, and it follows of necessity that they will not interfere with its exercise, unless in exceptional cases in which it is made clearly to appear that there has been an abuse of discretion amounting, in practical effect, to the denial of a public right or a repudiation of public obligations, which the corporation expressly or impliedly assumed in the acceptance of its charter and franchises. At the conclusion of a somewhat extended discussion of the subject in *State v. Republican Valley R. Co.*, 17 Neb. 647, this court say

that no court would interfere "except where it is made to appear that such interference is necessary to prevent an unjust discrimination, or an abuse of that discretion which must be conceded to reside in all private corporations in respect to their dealings with the public." And in *People v. Chicago & A. R. Co.*, 130 Ill. 175, the court say:

"It is undoubtedly the rule that railway companies, in the absence of statutory provisions limiting and restricting their powers, are vested with a very broad discretion in the matter of locating, constructing and operating their railways, and of locating and maintaining their freight and passenger stations. This discretion, however, is not absolute, but is subject to the condition that it must be exercised in good faith, and with a due regard to the necessities and convenience of the public."

This doctrine is approved and reasserted by the same court in *Mobile & O. R. Co. v. People*, 132 Ill. 559, the court saying:

"The company cannot be compelled, on the one hand, to locate stations at points where the cost of maintaining them will exceed the profits resulting therefrom to the company, nor allowed, on the other hand, to locate them so far apart as to practically deny to communities on the line of the road reasonable access to its use." And again touching another phase of the subject: "The duty to maintain or continue stations must, manifestly, rest upon the same principle, and a company cannot therefore be compelled to maintain or continue a station at a point, where the welfare of the company and the community in general requires that it be changed to some other point."

Such seems to be the unbroken tenor of the authorities, and the language of the supreme court of Iowa in *State v. Des Moines & K. C. R. Co.*, 87 Ia. 644, would have been aptly chosen as descriptive and decisive of the case before us. The court say:

"There is nothing in the case which tends to show that the managers of the road had any intention to deprive anyone of proper facilities for transacting business with the

company. * * * It appears to us that the owners of the road should not be interfered with in the management of their property, including the location of their stations, where, as in this case, there is no competent evidence that any patron of the road has been deprived of reasonable facilities for transacting business with the defendant."

We think that the foregoing principles and authorities are determinative of this case. Certainly it cannot be said that, under the circumstances disclosed by the record, the duty of the respondent to maintain an agent at Stafford is plain and unequivocal, or the right of the relators to demand that it so do is so clear and unquestionable as to bring the case within the often reiterated requirement of this court with reference to the remedy by mandamus. *State v. Bowman,* 45 Neb. 752; *State v. Nelson* 21 Neb. 572; *State v. Omaha,* 14 Neb. 265; *State v. Whipple,* 60 Neb. 650; *State v. Bartley,* 50 Neb. 874.

It does not appear to us that the patrons of the railroad company or the public would be seriously injured or inconvenienced by the proposed action of the company of which complaint is made, or that such action, if taken, would in the above quoted language of this court be "an abuse of its discretion with respect to its dealings with the public." Whether a private citizen having no peculiar interest and suffering no especial damage or injury can maintain a suit like this has not been debated and is not decided.

We recommend that the judgment of the district court be reversed and the action dismissed.

LETTON and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed and the action dismissed.

REVERSED.