McNEILL, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY and others, Appellants.

*December 11, 1931—January 12, 1932.*

576

*John F. Baker* and *Llewellyn Cole,* both of Milwaukee, for the appellants.

For the respondent the cause was submitted on the brief of *Francis Williams* of Sheboygan.

ROSENBERRY, C .J.  The findings of fact and conclusions of law cover twenty-five pages of the printed case and no useful purpose would be served by setting them out in full. In addition to the facts already stated, the court found that the quitclaim deed given by Mr. Spratt to the plaintiff was given freely and voluntarily and that no false statement or pretenses were used to obtain the same from Mr. Spratt.  In its opinion the court said:

"There can, of course, be no question what McNeill's intentions were in 1915 with respect to the railway company's property.  He took a quitclaim deed from Spratt, including streets and railroad tracks.  Spratt did not remember the giving of the deed, but he is an old man with a fading memory and he said so on the stand.  He said he 'might have quitclaimed.'  McNeill took that quitclaim with the intention of setting up a claim of adverse possession and he followed it up with actual, open, and hostile possession.  Of course he did not notify the railroad company; very few men could get title by adverse possession if they notified the true owner of their intentions.  Good faith is not an element of adverse possession.  McNeill started in to fill in the lots in various places; he improved and constructed roads; he built abutments for lumber along the tracks; he filled in along the lake and constructed concrete pillars along the lake; he moved buildings about and constructed new and permanent buildings on the railroad company's property.  The slightest attention to these matters would have given notice to the railroad company that here was a man exercising acts of ownership over its property."

The court also stated that the right-of-way agent of the defendant called upon Mr. McNeill in 1924, interviewed him, went over the entire situation with him, discussed the making of a lease, traveled over the property with the plaintiff or his son, but never discovered, either by the nature of

the occupancy or anything that the McNeills said, that they claimed title to the premises in question. The court said:

"If any representative of the company had made the same observation or investigation in 1915, or any year after that, which Mr. Cox [the right-of-way agent] did in 1924, he would have discovered just what Mr. Cox did,"—

which apparently was that the plaintiffs were using the property just as Mr. Spratt had used it and just as it was used prior to 1920, under the name of George Spratt & Company. No change in the manner of use occurred which apparently even aroused the suspicion of Mr. Cox. There was negotiation in regard to the rental, and eventually the negotiation was dropped and this suit was begun January 10, 1929.

Upon consideration of this case we must start with the proposition that the use of the premises in the manner in which they were used by all of the occupants was in its inception permissive. Upon that point there is no dispute. When Mr. Spratt executed the quitclaim deed to the plaintiff he had nothing to convey and no thought of conveying anything except such rights as he might have under his lease or by reason of the good will existing between him and the defendant relating to the use of the premises for their mutual benefit. From the findings of the trial court it must be accepted as a fact that the plaintiff attempted to so conduct himself as to bring himself within the rules of law relating to adverse possession without doing anything that would arouse the suspicion or prompt inquiry on the part of the defendant. Upon the trial an attempt was made to show that the use made of the premises in question was that customarily and ordinarily made by shippers to common carriers upon or near which they were situated and that such use was as a matter of custom not hostile but in the interest of both parties. The evidence was, however, excluded on plaintiff's objection. We are unable to discover a single cir-

cumstance down to the time of the organization of the company in January, 1920, that indicated or could have indicated to the defendant any intent on the part of the plaintiff to assert a right or title to the premises in question adverse or exclusive of the right of the defendant. It is quite true that one claiming under adverse possession is not required in proving his title thereby to show that he served notice upon the true owner; on the other hand, his possession must be not only adverse but exclusive and hostile. There was no circumstance shown in the evidence from which could be deduced any claim on the part of plaintiff to exclusive possession, and certainly he was careful not to disclose any hostile intent. If there were nothing to account for the relation of the parties, no relation of shipper and carrier, no permissive use in the beginning, a different construction might well be placed upon many of the circumstances detailed in 'the findings of fact made by the trial court. It is not enough that the plaintiff was in possession of the premises. It is true that possession may be of such a character and under such circumstances that the fact of possession is evidence of a claim of ownership on the part of the possessor and it may amount to exclusive and hostile possession, but a possession which is of a character which affords no ground for such an inference is not exclusive nor hostile.

It is considered that under all of the authorities such possession as plaintiff had here was wholly lacking in characteristics essential to form a basis for assertion of title under the ten- or the twenty-year statute. While the good faith of the plaintiff may not be necessary in one aspect of the case, his evident purpose to conceal from the defendant his true intentions and to do nothing which would prompt the defendant to make inquiry, served to characterize the quality of his possession, and being permissive in its inception it lacks the element of hostility, which is one of the necessary characteristics of an adverse possession. The first hostile act, the

first notice the defendant had that the plaintiff claimed to own the premises, was the commencement of this action. Much of the testimony taken in the case related to the extent of plaintiff's possession and comparatively a small amount related to the character of his possession. It is a well established rule of law that it requires declarations or acts of the most unequivocal character to change a use permissive in the beginning to one of an adverse character. *Guse v. Flohr,* 195 Wis. 139, 217 N. W. 730.

The fact that the plaintiff recorded a quitclaim deed given to him by George Spratt did not affect the situation, because by the terms of the recording act it applies only to those who subsequently deal with the title. *Bradley v. Selden,* 201 Wis. 61, 228 N. W. 494. For five years after purchasing the premises the plaintiff conducted all his operations in the name of George Spratt & Company, so that the defendant company had no reason to suppose that any one was claiming any other or different interest in the premises than that possessed by George Spratt. The plaintiff in fact did all that he could to conceal his true intention from the defendant. He never paid any taxes upon the premises. When defendant's agent was there he carefully refrained from making any claim of title to the premises. He in fact did nothing to convert that which was in its inception a permissive occupation into one that was hostile and adverse. No doubt the extent of the plaintiff's possession, other elements necessary to maintain plaintiff's claim being present, was ample. The plaintiff's claim fails because of the character of his possession. No decisive act of the plaintiff is shown which would tend to give notice that he was claiming title to the premises against all the world at any time prior to January, 1920. Assuming that there was some such act after 1920, when the corporation took title to the premises, this action was begun January 10, 1929, so that the plaintiff did not occupy the premises adversely under any possible

theory of the case for the required ten-year period. It would be a reproach upon the law if a person could obtain possession of premises by consent, procure the execution and delivery to him of a deed purporting to convey the premises from one who claimed to have no title, and then so conduct himself that the owner, being present by its agents and employees daily upon the premises throughout the entire statutory period, was never given any reason to suppose that the occupant claimed anything other than a permissive right. Under all of the authorities the possession of the plaintiff was neither exclusive nor hostile.

*By the Court.*—Judgment appealed from is reversed, and cause remanded with directions to dismiss the plaintiff's complaint.