John P. MEIERS and Thomas M. Meiers, Plaintiffs-Respondents,

v.

Daniel WANG, Defendant-Third Party Plaintiff-Respondent,

v.

WISCONSIN CENTRAL LTD., Third Party Defendant-Appellant-Petitioner.

Supreme Court

*No. 93–2279. Oral argument January 24, 1995.—Decided May 3, 1995.*

(Also reported in 531 N.W.2d 54.)

For the third party defendant-appellant-petitioner there were briefs by *Thomas L. Schober, Thomas V. Rohan* and *Schober & Ulatowski, S.C.,* Green Bay and oral argument by *Thomas L. Schober.*

For the plaintiffs-respondents there was a brief by *John R. Teetaert* and *Menn, Nelson, Sharratt, Teetaert & Beisenstein, Ltd.,* Appleton and oral argument by *John R. Teetaert.*

For the defendant-third party plaintiff-respondent there was a brief by *Thomas J. Janssen, Richard J. Knight* and *Sigman, Janssen, Wenning & Sutter,* Appleton and oral argument by *Thomas J. Janssen.*

JANINE P. GESKE, J. This is a review of an unpublished decision of the court of appeals, filed April 12, 1994, which affirmed a decision of the circuit court for Outagamie County, Joseph M. Troy, Circuit Judge. The circuit court awarded the plaintiffs, John and Thomas Meiers (the Meiers), a portion of a railroad right-of-way by adverse possession and, after amending the pleadings to conform to the evidence, awarded damages to third-party plaintiff Daniel Wang (Wang) as a result of the third-party defendant Wisconsin Central Railroad, Ltd.'s (Wisconsin Central) misrepresentation of the quantity of land Wang pur-

118

chased. Wisconsin Central appealed from the decision of the circuit court and argued before the court of appeals, *inter alia,* that (1) the Meiers failed to prove the requisite elements for adverse possession; (2) public policy ought to preclude an adverse possession claim relating to a railroad's right-of-way; and (3) the circuit court improperly found misrepresentation with respect to a portion of the right-of-way that was not identified in the pleadings.

The court of appeals affirmed the decision of the circuit court, concluding that the Meiers established the requisite elements for adverse possession and that public policy neither conflicted with nor preempted the Meiers' claim. Additionally, the court of appeals affirmed the circuit court's finding that Wisconsin Central negotiated the sale of a parcel of land to Wang which was based upon total square footage. Since the property ultimately conveyed was smaller in quantity than the amount Wisconsin Central represented to Wang, the circuit court did not erroneously exercise its discretion when it amended the pleadings to conform to the evidence.

We granted Wisconsin Central's petition for review of the court of appeals decision. Although Wisconsin Central raised three issues in its petition, we limited our review in this case to the following two issues:[1]

---

[1] In its petition for review, Wisconsin Central set forth the following potential third issue: "If the Petition is granted, the Petitioner will request a review of whether the Appellate Court erred in not ruling that as a matter of law, the record does not support a finding of negligent misrepresentation or strict responsibility against the Railroad." We did not grant review on this issue.

119

(1) Whether the court of appeals erred when it decided, as a matter of law, that the Meiers could maintain a valid adverse possession claim against railroad right-of-way property; and

(2) whether the court of appeals erred when it held that the circuit court did not erroneously exercise its discretion by amending the pleadings to conform to proof of a misrepresentation claim not alleged in Wang's third-party complaint.

For the reasons set forth below, we affirm the decision of the court of appeals and hold that, as a matter of law, a railroad, which has obtained its property through a private sale, is not protected against claims for adverse possession of its rights-of-way. First, the state is the only entity which is protected from an adverse possession claim under §§ 85.09 and 893.29, Stats.,[2] and public policy considerations do not shield a

---

[2] Section 85.09, Stats., provides in relevant part:

**85.09 Acquisition of abandoned rail property . . .. (2)** FIRST RIGHT OF ACQUISITION. (a) The department of transportation shall have the first right to acquire, for present or future transportational or recreational purposes, any property used in operating a railroad or railway, including land and rails, ties, switches, trestles, bridges and the like located thereon, which has been abandoned . . ..

. . .

(4) ACQUISITION AND CONVEYANCE. Upon its own initiative, the department may determine at any time whether the rail property is abandoned, and whether it is in the best interest of the state to acquire the rail property . . ..

Section 893.29, Stats., provides in relevant part:

**893.29 Adverse possession against the state or political subdivisions, special provision. (1)** Title to or interest in real property belonging to the state or a city, village, town, county, school district, sewerage commission, sewerage district or any other unit of government within this state may be obtained by adverse possession, prescription or user under s. 893.25, 893.26,

railroad from such claims. Since the Meiers, whose claim involved a parking lot which encroached upon a railroad right-of-way, established the requisite elements for adverse possession, the circuit court correctly found that the property belonged to them.[3]

Second, we conclude that the circuit court did not erroneously exercise its discretion when it amended the pleadings to conform to the evidence presented during a trial to the court. The circuit court provided the parties with the opportunity to submit post-trial briefs regarding its preliminary finding that Wisconsin Central misrepresented to Wang that the quantity of land to be conveyed did not include the City of Appleton's interest in a 10-foot strip of land along the right-of-way. Because the circuit court allowed the briefs to incorporate evidence which might challenge the pre-

897.27 or 893.28 only if the adverse possession, prescription or user continues uninterruptedly for more than 20 years.

(2) Notwithstanding sub. (1), no title to or interest in any of the following property shall be obtained by adverse possession, prescription or user:

. . .

(b) Real property of an abandoned railroad acquired by the state under s. 85.09.

[3] The circuit court held that the Meiers established the requisite elements for adverse possession by proving that their use of the parking lot property was hostile, open and notorious, exclusive and continuous for the statutory period. *See Leciejewski v. Sedlak,* 116 Wis. 2d 629, 636, 342 N.W.2d 734 (1984). Specifically, § 893.25, Stats., requires uninterrupted occupation of the land in question for 20 years and that the party claiming adverse possession provide enclosure, cultivation or improvement thereon. According to the circuit court, the Meiers' continuous use of the parking lot since its construction in the mid-1950's, and the asphalting of a portion of the lot in 1967, more than adequately met the common law and statutory requirements.

liminary findings, Wisconsin Central was not prejudiced by the court's subsequent amendment of the pleadings.

Finally, we agree with Wisconsin Central that a complaint which alleges fraud must meet the requirements of § 802.03(2), Stats., which provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." However, that statute does not preclude the circuit court from amending pleadings to conform to the proof pursuant to § 802.09(2), Stats. *See State v. Peterson,* 104 Wis. 2d 616, 312 N.W.2d 784 (1981).

·The facts are as follows. In 1987, Wisconsin Central purchased a rail line and right-of-way from the Soo Line Railroad. The right-of-way ran along the north side of West College Avenue in Appleton, Wisconsin. At some point during the first half of 1990, Wisconsin Central abandoned the line and decided to sell off parcels located along the right-of-way. Rail Property Management, Inc., an Illinois real estate firm, served as the railroad's agent and posted a "For Sale" sign on the subject property in June 1990. On October 10, 1990, the State of Wisconsin filed a waiver of interest in the property pursuant to § 85.09, Stats.

Wang first became aware of the availability of the property through Howard Anthony (Anthony), a real estate agent from Green Bay. Anthony knew that Wang owned commercial real estate adjacent to the land the railroad intended to sell.[4] Wang expressed interest in the right-of-way because it could offer great

---

[4] Wang, who owned a restaurant in Green Bay, purchased two additional properties, one in Grand Chute and the other on West College Avenue in Appleton. Both parcels were considered potential sites for a second restaurant.

visibility for a potential restaurant or other future development on his commercial property.

Anthony subsequently contacted Rail Property Management, which sent him a packet of information, including a description of the property and an asking price of $2.50 per square foot.[5] Wisconsin Central represented that the parcel was 63,700 square feet, running 637 feet from east to west along West College Avenue and 100 feet from north to south. Prior to purchase, Anthony and Wang together inspected the property on at least two occasions. During one of the visits, Anthony attempted to pace off the property's boundaries, using a map provided by the railroad. The circuit court would ultimately conclude that Anthony told Wang the 100-foot boundary of the property started at the curb line along West College Avenue and extended to the southern border of a parking lot adjacent to a business owned by the Meiers.

We must note at this point that a 10-foot strip of land along the right-of-way was included within the 100-foot boundary, which, according to the record, appears to be a 10-foot tree easement for the city on land owned by the railroad.[6] The circuit court, however, found that the city owned this 10-foot strip. Since Wisconsin Central has not appealed this finding, we must accept the circuit court's finding of city ownership for purposes of this analysis.

On December 27, 1990, Wisconsin Central sold the property in question to Wang by means of a quitclaim deed. After Wang purchased the property and learned

---

[5] Following some negotiation, the sale price for the parcel was reduced to $1.50 per square foot for a total cost of $97,500.00.

[6] The 10-foot strip was not marked on the railroad's map Anthony used when pacing off the property's boundaries.

that the parking lot was included in the sale, he attempted, unsuccessfully, to sell the lot to the Meiers. The Meiers in turn filed suit against Wang, asserting their ownership of the lot by adverse possession. Wang thereafter erected a fence to prevent access to the lot and filed a third-party complaint against Wisconsin Central, alleging three theories of misrepresentation: strict responsibility, intentional misrepresentation and/or negligent misrepresentation. Specifically, Wang alleged that Wisconsin Central failed to disclose the Meiers' adverse possession claim, resulting in a misrepresentation of the quantity of land Wang thought he purchased.

During a trial to the court, Wisconsin Central denied that any misrepresentation occurred, claiming that the presence of the parking lot was open and obvious at the time of the sale. Further, the railroad argued that because the sale documents stated the property was to be conveyed "as is," Wang was required to obtain his own survey and title commitment. Wisconsin Central would only give a quitclaim deed.

At the conclusion of the trial, the court awarded the Meiers title to the land on which the parking lot was located, concluding that all the statutory elements for adverse possession had been established. Additionally, the court awarded Wang damages in the amount of $28,359, resulting from Wisconsin Central's misrepresentation of the quantity of the land conveyed in the sale. The finding of misrepresentation, however, was not based upon the railroad's failure to disclose the Meiers' adverse possession claim as pled in Wang's third-party complaint.[7] Rather, the circuit court found

---

[7] According to the court, Wang unequivocally testified that no one from the railroad communicated to him anything about an adverse possession claim by the Meiers until some time after

that Anthony, acting as an agent for Wisconsin Central,[8] misrepresented the city's interest in the 10' × 238' strip along West College Avenue:

> While the total square footage, excluding the adverse possession claim of the Meiers', was in fact conveyed to Daniel Wang, the actual land conveyed did not include the ten foot strip along College Avenue that was represented to Mr. Wang. This strip of land was material in inducing Mr. Wang to purchase the property in question. In particular, the ten foot strip of land along the southeastern border of the property in question gave the appearance to Mr. Wang that he was purchasing land which would not infringe on the parking lot owned by the Meiers'. Of course, this ten foot strip of land was not owned by the railroad, and could not be conveyed to Mr. Wang.

the purchase. That testimony was contrary to Anthony's. Consequently, the circuit court found that "Mr. Wang cannot sustain a misrepresentation claim against the railroad [for the parking lot] because he can neither prove that there was a representation made to him that was untrue nor could he prove that he relied on any such misrepresentation as an inducement to purchase."

[8] The court concluded that Anthony and Rail Property Management acted as co-brokers for Wisconsin Central, since Anthony would receive a 4% commission upon the sale of the property. Thus, "it's obvious that Mr. Anthony's interests were in selling the property at the highest possible price because his fee structure was structured so that it would only be upon a sale of the property that he would receive any payment or any income out of his transaction and the amount of that payment was tied to how much he could get Mr. Wang to pay for the property." Consequently, Anthony had an obligation to disclose the 10-foot tree easement to Wang.

After the circuit court rendered its decision, it observed that the finding on the unpleaded misrepresentation claim might have been unanticipated by the parties. Consequently, the parties were invited to submit (and subsequently did file) post-trial briefs to address the circuit court's preliminary findings. In its final decision and order dated June 24, 1993, the circuit court: (1) denied Wisconsin Central's motion for reconsideration of its findings regarding the Meiers' adverse possession claim; (2) found that strict liability for misrepresentation applied to the facts of the case; and (3) found that the pleadings should be amended to conform to the evidence pursuant to § 802.09(2), Stats.[9]

In a Per Curiam decision, the court of appeals affirmed the findings of the circuit court, concluding that:

(1) The requisite elements for adverse possession had been established, and public policy did not conflict with or preempt the Meiers' claim;

---

[9] Section 802.09(2), Stats., provides:

**802.09 Amended and supplemental pleadings** . . .

**(2)** AMENDMENTS TO CONFORM TO THE EVIDENCE. If issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice such party in maintaining the action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

(2) even though the misrepresentation initially pled by Wang failed, the circuit court correctly found that Anthony, acting as an agent for the railroad, made a representation of fact that the 10-foot strip along the curb line was included in the sale;

(3) there was extensive evidence at trial which established the fact that Wisconsin Central and Wang intended a sale by quantity. Because a finding of misrepresentation and resulting damages relate to the quantity of the land and not its condition, the nature of the quitclaim deed was not relevant to a claim for misrepresentation. Further, Wang was entitled to rely upon the representations made without being obligated to do something more to ascertain the truth of the representations; and

(4) Section 802.09, Stats., allows the court to amend the pleadings to conform to the evidence.

## *THE MEIERS' ADVERSE POSSESSION CLAIM*

In its brief to this court, Wisconsin Central does not dispute the findings of the circuit court and the court of appeals that the Meiers proved the requisite elements for adverse possession. Instead, Wisconsin Central argues that we should hold, as a matter of law, that private landowners cannot acquire a railroad right-of-way by adverse possession.

Wisconsin Central argues that public policy considerations should bar private landowners from asserting an adverse possession claim against railroad rights-of-way because: (1) the protections afforded to the state under §§ 85.09 and 893.29, Stats., are broad enough to encompass railroads; (2) rights-of-way ought to be dedicated to the public purposes served by the railroad; and (3) constant monitoring for trespassers, squatters and encroachers along a right-of-way would

place undue and impractical burdens upon a railroad. In the alternative, even if the court concludes that a private landowner can adversely possess a portion of a railroad right-of-way, Wisconsin Central argues that the claim should not even begin to accrue until the state exercises its right of first refusal under § 85.09. According to the railroad, this would mean that if the state had elected to acquire the right-of-way in question, the Meiers' adverse possession claim regarding the parking lot property would be null and void.

First, we conclude that the language of §§ 85.09 and 893.29, Stats., does not support the broad statutory interpretation Wisconsin Central urges this court to adopt. If the meaning of the statute is clear, this court will not look outside the statute to ascertain what the legislature intended. *See State v. Speer,* 176 Wis. 2d 1101, 1121, 501 N.W.2d 429 (1993); *In Interest of P.A.K.,* 119 Wis. 2d 871, 878, 350 N.W.2d 677 (1984). In this case, the language of §§ 85.09 and 893.29 clearly indicates that only the state is to be protected from an adverse possession claim. Further, as the court of appeals correctly noted, the dispute in this case is purely private and, as such, the ancient and entrenched doctrine of adverse possession prevails.[10]

---

[10] Nor can Wisconsin Central look to case law to support its argument that public policy ought to bar adverse possession claims against abandoned railroad property. In a previously reported case, *McNeill v. Chicago & N.W.R. Co.,* 206 Wis. 574, 240 N.W. 377 (1932), this court confronted the issue of whether an individual could adversely possess a portion of railroad property. However, the decision made no mention of any public policy concerns in allowing such a claim. Instead, the court held that, under the facts of the case, the "plaintiff's claim [failed] because of the character of his possession. No decisive act of the

■

Second, public policy does not bar a private citizen's claim for adverse possession of a railroad right-of-way when the railroad, such as Wisconsin Central and its predecessors, acquired the property by means of a private sale. The nature of a railroad right-of-way acquired by means of a private sale is distinctly different from a thoroughfare dedicated as a public road by the state. The dispute in this case involves private parties and does not, therefore, implicate the state or its interest in acquiring the land for a public purpose.

■

Third, Wisconsin Central had the obligation, as a private landowner, to monitor its right-of-way property for trespassers, squatters and encroachers.[11] A railroad faces the same risks as all other private landowners: a party may claim adverse possession against its property if that party can show uninterrupted occupation of the land for 20 years, as well as enclosure, cultivation or improvement thereon. *See* § 893.25, Stats.

Fourth, we need not address what might have happened in this case if the state had exercised its right of first acquisition under § 85.09 to the right-of-way property, because the state chose to waive that right in October 1990 and has not claimed any interest in the land. Consequently, the statutory protections of § 893.29 are not implicated.

---

plaintiff [was] shown which would tend to give notice that he was claiming title to the premises against all the world . . .." *Id.* at 581.

[11] The record indicates that the railroad in fact assigned an employee for that specific purpose.

Accordingly, public policy considerations do not protect a railroad, which has purchased land for a right-of-way, from a later adverse possession claim brought by a private citizen.

## THE MISREPRESENTATION CLAIM

The second issue before us is whether the court of appeals erred when it found that the circuit court did not erroneously exercise its discretion by amending the pleadings to conform to proof of a misrepresentation claim not alleged in Wang's third-party complaint. In particular, Wisconsin Central argues that the circuit court erroneously exercised its discretion when it failed to dismiss Wang's claim for damages after the misrepresentation allegations regarding the parking lot failed. According to the railroad, any finding of misrepresentation which did not pertain to the parking lot went beyond the pleadings, Wang's theory of the case, and the testimony of the witnesses. We disagree and hold that the circuit court's amendment of the pleadings to conform to the evidence was within its sound discretion.

During the course of a two-day trial to the court, Wang and Wisconsin Central presented testimony from 11 witnesses and offered 26 exhibits into evidence. The testimony, from Anthony and an expert witness for Wang, concerned the dimensions of the property and the city-owned 10-foot strip along West College Avenue. The exhibits, including the contract of sale and plat of survey, described the *quantity* of the land the railroad represented for sale. None of those documents, however, indicated to Wang that the 100-foot width of the parcel was encumbered by the city's

interest in the 10-foot strip of land along West College Avenue.

At the close of the trial, the circuit court made the following preliminary finding:

> The basis for any misrepresentation claim . . . is as already indicated cannot rest on any statements related to the adverse possession claims of the Meiers because Mr. Wang says no such representations were made to him. The question is is there other evidence in the case of a misrepresentation of fact that Mr. Anthony made to Mr. Wang with respect to this property that ultimately became an inducement, a material inducement to him in purchasing the property.

The court found that Wisconsin Central represented the 100-foot boundary as running from the curb to the southern part of the parking lot. Such a representation, according to the court, was false because the railroad, through Anthony, should have known that the city was likely to have a right-of-way which extended beyond the curb line along West College Avenue. As a result,

> Mr. Anthony's representation to Mr. Wang was wrong. His property that he was purchasing did not begin at the curb and as a natural and probable consequence of that misrepresentation Mr. Wang purchased sixty-five feet approximately not one hundred feet and at the very least he had thirty-five feet approximately of land in that portion, less of land . . . than what he paid for. He paid for square footage . . . . So at the very least he's entitled to being reimbursed . . . for that square footage which he was not granted in this conveyance that he believed that he was.

The circuit court subsequently advised the parties that the pleadings would be amended since there was

131

probably enough evidence in the record to prove misrepresentation regarding the 10-foot strip. However, the court also stated:

> It isn't a finding that I think counsel anticipated the court making. For those reasons, I think it's reasonable to ensure that I arrive at a sound decision to give you a chance to analyze it and present argument to the court on these points before I make any further finding . . . [and] . . . to provide the court with written argument based on the evidence if that would be agreeable to the parties.

The pleadings were amended only after the court provided the parties with the opportunity to submit post-trial briefs in order to respond to the preliminary findings and to include therein any relevant evidence which had not already been introduced at trial. As a consequence, Wisconsin Central was afforded the protections mandated by this court in *Huntoon v. Capozza*, 57 Wis. 2d 447, 204 N.W.2d 649 (1973); and *Peterson*, 104 Wis. 2d 616.

In *Huntoon*, this court held that the circuit court properly amended the pleadings on its own motion because, as in the instant case, it provided the parties the opportunity to submit post-trial briefs on an issue which was not alleged in the complaint. As a result, the defendant was not prejudiced by the admission of proof at variance with the pleadings. *Huntoon*, 57 Wis. 2d at 455–56.

In *Peterson*, this court again dealt with a circuit court's *sua sponte* amendment of the pleadings to conform to the evidence and whether a party was prejudiced thereby. Though "the circuit court was correct in holding that it had the power to amend the complaint on its own motion after the presentation of

the evidence, the circuit court erred in not granting the parties an opportunity to present additional evidence on the complaint as amended." *Peterson,* 104 Wis. 2d at 618. Further,

> [u]nless the circuit court finds on the record that the parties expressly or impliedly consented . . . to trial of the unpleaded issue, it is within the discretion of the circuit court whether under all the facts and circumstances of the particular case justice requires amendment of the pleadings to conform to the evidence. Where the circuit court *sua sponte* exercises its discretion to amend the charge after the evidence is in to conform the pleadings to the evidence which was admitted without objection and where the posture of the case is such that additional evidence could still be received, the circuit court must offer both sides an opportunity to submit additional evidence. The opportunity to submit additional proof must, of course, be a meaningful one. Whether that opportunity requires a continuance is within the discretion of the circuit court.

*Id.* at 639 (footnote omitted).

Though it can be argued, and in fact Wang conceded, that Wisconsin Central neither expressly nor impliedly consented to the trial of the misrepresentation issue as determined by the circuit court, the railroad was not prejudiced by the court's decision to amend the pleadings because: (a) it did not object during the trial to the relevance of the testimony regarding the city-owned 10-foot strip; (b) it did not seek a continuance in order to consider such evidence; (c) at the time the circuit court made its preliminary findings, the parties were given the opportunity to submit post-trial briefs, incorporating any relevant evidence not proffered at trial on the issue; and (d) in its post-trial brief,

Wisconsin Central neither submitted additional proof nor argued that it had been unfairly prejudiced by the circuit court's amendment of the pleadings.

Finally, we note Wisconsin Central's argument that the circuit court should have been precluded from amending the pleadings because its finding of misrepresentation regarding the 10-foot strip was not pled in the complaint with the specificity required by § 802.03(2), Stats.[12] The particularity requirement, according to the railroad, "put[s] defendants on notice so that they may prepare meaningful responses to the claim." *Rendler v. Markos,* 154 Wis. 2d 420, 428, 453 N.W.2d 202 (Ct. App. 1990) (citation omitted). We now hold that § 802.03(2) addresses the language that must be contained in certain pleadings or in motions addressing the pleadings. That statute does not preclude the court from amending the pleadings to conform to the evidence presented at trial, pursuant to § 802.09(2), Stats., as long as the parties either consent or are given the opportunity to submit additional proof. *See Peterson,* 104 Wis. 2d at 639.

Based on the circuit court's conduct at the close of the trial, as well as the discretion which it is afforded under § 802.09(2), Stats., we conclude that the circuit court's *sua sponte* amendment of the pleadings was not an erroneous exercise of discretion.

---

[12] Section 802.03(2), Stats., provides:

**802.03 Pleading special matters . . ..**

 **(2)** FRAUD, MISTAKE AND CONDITION OF MIND. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

*By the Court.*—The decision of the court of appeals is affirmed.