RAYMOND AND NEGOSHIA GUSTIN, APPELLEES, V. GLEN SCHEELE, APPELLANT.

549 N.W.2d 135

Filed June 14, 1996. No. S-94-215.

Charles D. Humble and Linda W. Rohman, of Erickson & Sederstrom, P.C., for appellant.

Jeffrey L. Stoehr, of Stoehr & Searson, for appellees.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

WHITE, C.J.

Plaintiffs-appellees, Raymond and Negoshia Gustin, brought this quiet title action for the purpose of establishing the south boundary line to real property owned by the Gustins, and the north boundary line to real property belonging to defendant-appellant, Glen Scheele. The parties' lots had previously been separated by a railroad right-of-way owned by the Missouri Pacific Railway Company (railroad). Scheele purchased the right-of-way property of the railroad, and a dispute arose as to whether the Gustins were possessing former railroad right-of-way property. The district court found in favor of the Gustins on the theory of adverse possession, quieted title in the Gustins, and permanently enjoined Scheele from interfering with the Gustins' use of their land. Scheele appeals.

Scheele assigns five errors, which can be consolidated into three. Scheele contends that (1) the district court erred in holding that Neb. Const. art. X, § 4, does not prevent railroad property located in the State of Nebraska from being adversely possessed, (2) the district court erred in holding that the limitations period for adverse possession of a railroad right-of-way could commence before the railroad has abandoned the track or line construction on the right-of-way, and (3) the district court erred in concluding that the Gustins had

sustained their burden to prove they and their predecessors in title had satisfied the requirements of adverse possession.

In 1887, the railroad acquired property from private owners for the use of its railroad. These deeds did not provide a formal metes and bounds description. The deeds only described the property as "[a] strip of ground one hundred feet wide it being Fifty feet on each side of the center line of the Railroad of said Company with all additional strips of land said Railroad Company may require or may have taken or used to construct its said railway line . . . ." The parties do not dispute that this property was acquired by the railroad in fee simple.

In April 1982, the Gustins acquired by warranty deed the ownership of Lots 20 and 22 of Irregular Tracts in the south half (S $\frac{1}{2}$) of Section 31, Township 8 North, Range 8 East of the 6th P.M., Lancaster County, Nebraska. These lots' southern borders abutted the railroad right-of-way. The Gustins' lots have never been described by any particular metes and bounds descriptions. Specific to this appeal is the location of the south boundary line of Lot 20.

The west end of the south border of Lot 20 contains an extrusion in a southerly direction that is enclosed by the Gustins' fence. Raymond Gustin testified that he measured this extrusion to be approximately 10 feet in width north to south by 328 feet in length east to west. Gustin and others testified that this fenced extrusion existed at the time the Gustins acquired the property. Gustin's father testified that the fence line had been in exactly the same location for the past 75 years. Gustin also testified that the southern fence line's distance from the center of the railroad right-of-way varied from approximately 28 feet to 52 feet.

Gustin testified that since they purchased the property in 1982, the Gustins have used the full extent of the property for agricultural purposes such as cattle grazing. Also, at some point during his possession of the property, Gustin ran an electric wire along the inside of the fence to keep cattle from escaping. He testified that the Gustins have maintained and repaired the southern fence line of the property throughout their ownership. While the railroad was still in operation, the

railroad maintained the property south of the fence by removing noxious weeds and mowing, but did not maintain any property north of the fence line.

Gustin also testified that other than Scheele's actions, there has been no interruption in the Gustins' use of the land that makes up the extrusion on the southern border of their property.

In 1985, the railroad discontinued the operation of its line in this area. On April 30, 1987, Crete Branch, Inc., obtained title to the right-of-way property from the railroad through quitclaim deed.

On February 9, 1993, Scheele acquired title to the railroad right-of-way by quitclaim deed from Crete Branch, Inc. The quitclaim deed described the property as:

> A strip of land, varying in width, 100 to 150 feet in width, and being the former right-of-way of the Missouri Pacific Railway Company, upon and through the South Half of the South Half (S1/2S1/2) of Section 31, Township 8 North, and Range 8 West of the Sixth Principal Meridian, Lancaster County, Nebraska.

After acquiring this property, Scheele had it surveyed by Dennis D. Simonds of Allied Surveying Company. This survey depicts a boundary line vastly different from what the Gustins treated as the boundary. Rather than depicting a southerly extrusion at the west end of the property of an area of 10 by 328 feet, the survey depicts a northerly jog at the west end of the property approximately 50 feet in width by 700 feet in length. In other words, Scheele contends that the railroad owned an additional 50- by 700-foot strip of land north of the center of the railroad tracks, making the railroad's property in this area 100 feet wide north of the center of the tracks.

Simonds testified that to perform his survey, he used and relied on the original deeds, right-of-way maps from the Lancaster County engineer's office and the Union Pacific Railroad, and a survey of a lot adjacent to Lot 20. He testified that he conducted a physical inspection of the property, looking for physical features such as culverts, bridges, and abutments. He then compared his actual dimensions with the

dimensions provided on the maps in order to set the boundaries as depicted in his survey. .

After receiving the survey from Simonds, Scheele removed portions of the preexisting fence and built his own fence, moving the fence line to the position he believed to be the north end of his property as indicated by the survey.

On July 23, 1993, as a result of Scheele's conduct, the Gustins brought this action to quiet title in the disputed property. They alleged in their petition that they acquired title to the area enclosed by the original fence line by adverse possession. The Gustins sought that title to "all property located north of the original south fence line and not included within the platted description of Lot 20, if any, be quieted and confirmed in the plaintiffs as against the defendant . . . ." They also sought injunctive relief and damages.

On December 9, the district court issued an order quieting title to the strip of land in the Gustins, and permanently enjoining Scheele from entering the Gustins' property. In this order, the district court judge stated, "The south line of the strip in question, is more than 50 feet from the center line of the property granted to the railroad. There is no evidence that the railroad ever acquired the strip as used in question, except conjecture on the part of the surveyor." The judge also stated that "[t]he preponderance of the evidence shows that the plaintiffs and their predecessors in title, have been in actual, continuous, exclusive, notorious, and adverse possession under claim of ownership for a period of over ten years as to the defendant."

On December 16, Scheele filed a motion for new trial, contending, among other things, that there was an irregularity in the district court judge's December 9 order which prevented Scheele from having a fair trial. Specifically, Scheele's motion stated:

> On page 3 of the Court's Order, the following is found: "[T]he south line of the strip in question, is more than 50 feet from the center line of the property granted to the railroad[.]" Other references in the Order to the 10' x 328' strip of land seems [sic] to locate the south side of

the strip 40 feet from the center line of the former railroad right-of-way.

On January 27, 1994, the district court entered a modified order which again quieted title in the Gustins and permanently enjoined Scheele from entering the property. This modified order was the same as the court's original order in every respect except that it no longer contained the judge's finding that the strip of land was more than 50 feet from the centerline of the right-of-way. The judge ordered that

title to the property described as a strip of land 10' x 328' on the south side of Lot 20 of Irregular Tract, located in the south half, Section 31, Township 8 North, Range 8 East of the 6th P.M., Lancaster County, Nebraska, which is encompassed by a boundary line fence, is confirmed and quieted in the plaintiffs as to the defendant.

Scheele appeals from the modified order of the district court.

A quiet title action sounds in equity. *Poppleton v. Village Realty Co.*, 248 Neb. 353, 535 N.W.2d 400 (1995). In an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Whitten v. Malcolm*, 249 Neb. 48, 541 N.W.2d 45 (1995); *City of Lincoln v. Townhouser, Inc.*, 248 Neb. 399, 534 N.W.2d 756 (1995).

The Gustins contend that the property line dispute in this case can be resolved under the theory of acquiescence and recognition, rather than adverse possession. We dispose of this contention before addressing Scheele's assignments of error regarding adverse possession.

It is true that where the record demonstrates that the decision of the trial court is correct, although such correctness is based on a different ground from that assigned by the trial court, the appellate court will affirm. *Crystal Clear Optical v. Silver*, 247 Neb. 981, 531 N.W.2d 535 (1995). However, the Gustins failed to plead the theory of acquiescence and recog-

nition, as required by Neb. Rev. Stat. § 34-301 (Reissue 1993). Moreover, where a particular theory of the case is not stated in a plaintiff's petition, he or she cannot raise it for the first time on appeal. *Gibb v. Strickland*, 245 Neb. 325, 513 N.W.2d 274 (1994). Because the theory of recognition and acquiescence was not put in issue by the pleadings, it will not be considered on appeal.

Regarding the district court's finding based on adverse possession, we first find it necessary to ascertain whether railroad property is involved, for the reason that additional issues arise if an adverse possessor is claiming title to railroad property. The original railroad deeds granted a 50-foot strip north of the center of the railway tracks. Raymond Gustin testified that his fence line varied from 28 to 52 feet in distance from the center of the tracks. Therefore, without even considering whether Simonds' survey of the property accurately depicted the railroad boundary, at least a portion, if not all, of the strip of land in question is former railroad property as described in the deed.

Railroads are somewhat unique in that they are private corporations conducting their operations for the general welfare of the public and are regulated by the state's Public Service Commission. Railroads, although they are private corporations, also can acquire land by eminent domain for their use. Neb. Rev. Stat. § 74-308 (Reissue 1990).

Moreover, railroad lines are characterized as public highways in this state. Article X, § 4, of the Nebraska Constitution declares railroads public highways and provides, in relevant part: "Railways heretofore constructed, or that may hereafter be constructed, in this state are hereby declared public highways, and shall be free to all persons for the transportation of their persons and property thereon, under such regulations as may be prescribed by law."

Scheele contends that the land in question cannot be adversely possessed because it was originally railroad property. He argues that the statutory period for adverse possession of railroad property cannot commence until the railroad has completely abandoned the property. Scheele claims that the railroad in this case did not abandon the property until 1985,

and therefore the Gustins' action for adverse possession, commenced in July 1993, fails because the statutory period has not been satisfied.

In support of this contention, Scheele contends that article X, § 4, as construed in *Edholm v. Missouri P. R. Corporation*, 114 Neb. 845, 211 N.W. 206 (1926), prevents railroad property from being subject to adverse possession until the railroad has completely ceased service and abandoned the property.

In *Edholm*, this court held that a right-of-way for the construction of a railway acquired by condemnation proceedings is not subject to alienation by adverse possession so long as a railroad is operated thereon.

This court's reasoning in support of the holding in *Edholm* was largely dependent on the fact that the property was obtained by condemnation proceedings. The court first acknowledged, "Whether title by adverse possession may be acquired to lands forming a part of the right of way of a railroad corporation, acquired in the exercise of the power of eminent domain, is an open question in this state." *Id.* at 847, 211 N.W. at 207.

The court then discussed the two state constitutional provisions it found applicable to the facts. It first discussed article X, § 4, mentioned above, pertaining to the classification of railways as public highways, then discussed Neb. Const. art. X, § 6, which states:

> The exercise of the power and the right of eminent domain shall never be so construed or abridged as to prevent the taking by the legislature, of the property and franchises of incorporated companies already organized, or hereafter to be organized, and subjecting them to the public necessity the same as of individuals.

The court then noted that under the state Constitution, "a railway company may, by condemnation proceedings, in the exercise of the power of eminent domain, acquire a right of possession and easement over real estate for the purpose of constructing and operating a railway." 114 Neb. at 847, 211 N.W. at 208. The court also concluded that pursuant to article X, § 6, this right may be acquired only for a public use, stating, "It is not within the power of a railway company to

take, by condemnation proceedings, the right of possession of a private owner of lands for any other purpose than for a public use, and it holds the right of possession only for such purpose." 114 Neb. at 847-48, 211 N.W. at 208.

The court further observed:

> A railway company may not, by its voluntary act, alienate its right of way to private individuals, to be used for private purposes inconsistent with that for which the right of way was acquired. If it could do so, then it would be possible to condemn and take private property, ostensibly for a public purpose, and immediately convert it for a private purpose. It would be permitting, by indirection, the condemnation of private property for a private purpose, which our law does not sanction.

*Id.* at 848, 211 N.W. at 208.

The *Edholm* court continued:

> If a railway company cannot voluntarily alienate any part of its right of way so long as it is using the same for railway purposes, it is difficult to perceive how, by its inaction, it can permit title to be acquired, and it is also difficult to perceive how one can acquire a greater right against a railway company by adverse possession than he can acquire by a conveyance from it.

*Id.*

In conclusion, the *Edholm* court stated:

> We do not wish to be understood as holding that a railroad right of way, obtained by condemnation proceedings, may not be divested by adverse possession when there has been full abandonment of the right of way, such as where the railroad company removes its tracks from the right of way and places them in an entirely different location.

*Id.* at 849, 211 N.W. at 208.

The holding and reasoning set forth in *Edholm* are correct when analyzing an adverse possession claim of railroad property that was originally acquired by condemnation. It is apparent, however, that the *Edholm* court did not address the issue of whether its holding would apply to a claim of adverse possession of property originally acquired by a railroad through

private sale and held in fee simple—the facts of this case. Therefore, we must determine whether the holding in *Edholm* should be extended to apply to a claim for adverse possession of railroad property acquired by a railroad in fee simple, rather than by condemnation.

This distinction has previously been noted by the court. In *Chicago, R. I. & P. R. Co. v. Welch*, 83 Neb. 106, 118 N.W. 1116 (1908), the court determined whether a party who subsequently acquired title to property originally granted to a railroad in fee simple was protected under the state's recording statutes by recording his deed first. The railroad in *Welch* acquired property in fee simple for the use of its railroad line. The grantors of the railroad property then platted a village on adjacent land owned by them. This plat, however, overlapped the description in the deed conveyed to the railroad. The railroad never used the portion of the land which was contained in the village plat. The defendant subsequently purchased from the original grantors two lots which were located within the railroad's property. The defendant filed his deed before the railroad filed its deed to the land.

The *Welch* court first noted:

> The briefs of counsel contain a learned and instructive argument relative to the law of adverse possession as applied to a railroad right of way, but we do not consider that subject an important one in the instant case. Plaintiff did not acquire the land in dispute by condemnation proceedings, but by warranty deed.

*Id.* at 108, 118 N.W. at 1116. The court ultimately held that the defendant was protected under the state's recording statute, determining that the defendant was a bona fide purchaser and filed his deed without notice of the railroad's ownership.

As the *Welch* case indicates, a railroad holding title to property in fee simple can be divested of its property.

The Supreme Court of Wisconsin has recently held that railway property acquired by means of a private sale is subject to divestiture by adverse possession. *Meiers v. Wang*, 192 Wis. 2d 115, 531 N.W.2d 54 (1995). Although Wisconsin does not appear to have a state constitutional provision declaring railroads public highways, Wisconsin statutes give railroads the

power to condemn property and operate railway lines thereon when the state deems the railway line will serve a public convenience and necessity. See Wis. Stat. Ann. §§ 32.02 (West 1989) and 191.01 (West 1992).

The *Meiers* court, addressing the appellant's argument that railroad property could not be adversely possessed, stated that

> public policy does not bar a private citizen's claim for adverse possession of a railroad right-of-way when the railroad . . . acquired the property by means of a private sale. The nature of a railroad right-of-way acquired by means of a private sale is distinctly different from a thoroughfare dedicated as a public road by the state. The dispute in this case involves private parties and does not, therefore, implicate the state or its interest in acquiring the land for a public purpose.

192 Wis. 2d at 129, 531 N.W.2d at 60.

The concerns raised by the *Edholm* court in regard to condemned property do not arise in a case such as the one at bar. A property owner holding property in fee simple is permitted to freely alienate any part of his or her property. See *Andrews v. Hall*, 156 Neb. 817, 58 N.W.2d 201 (1953). An adverse possessor acquiring property held in fee simple does not acquire more than he could have acquired in a conveyance from the original owner.

Also, " 'railway companies, in the absence of statutory provisions limiting and restricting their powers, are vested with a very broad discretion in the matter of locating, constructing and operating their railways . . . .' " *Chicago & N. W. R. Co. v. State*, 74 Neb. 77, 80, 103 N.W. 1087, 1088 (1905). Therefore, a railroad acquiring property in fee simple for the use of its railway line has discretionary powers in determining what amount of land is necessary for the use of its railway operations. Holding the property in fee simple, the railroad could have alienated the property not used for its railway purposes to individuals. See Neb. Rev. Stat. § 74-305 (Reissue 1990) (repealed 1994).

On the other hand, as noted in *Edholm v. Missouri P. R. Corporation*, 114 Neb. 845, 211 N.W. 206 (1926), by condemnation, a railroad only acquires an easement or

right-of-way over the land for the limited use of operating its railroad for the welfare of the public. The state permits a railroad to acquire and hold the condemned land for the sole purpose of establishing a public highway. See § 74-308; article X, § 4. This easement is based on public necessity and serving the welfare of the citizens of this state. The condemnee, however, does not relinquish his or her possessory interest in the underlying land.

Based on the foregoing, we find that railroad property acquired by private sale and held in fee simple is subject to adverse possession.

We do recognize, however, that public highways cannot be adversely possessed. *Plischke v. Jameson*, 180 Neb. 803, 146 N.W.2d 223 (1966); *Barrett v. Hand*, 158 Neb. 273, 63 N.W.2d 185 (1954). As mentioned previously, under the state Constitution, railroads are declared public highways. Therefore, to be consistent with the Constitution and case law of this state, our holding is limited to railroad property, held in fee simple by a railroad, which has not been designated for its railroad line or other operations such as stations, depots, sidetracks, et cetera.

The property allegedly adversely possessed in this case has not been declared a public highway and therefore does not deserve protection under the state Constitution. The railroad determined what portion of its property held in fee simple was required for railway purposes. This is evidenced by the fence line that has been in existence, according to some testimony, for over 75 years. Also, the railroad maintained the property only up to fence line, mowing and controlling noxious weeds. The railroad did not maintain any property north of the fence line bordering the Gustins' property. These circumstances reflect the railroad's intention that the land south of the fence be designated for railroad purposes, but not the property located to the north of the fence. The railroad, holding title in fee simple, could have conveyed the property not being used for railway purposes to private owners. Rather than conveying the property in question, the railroad failed to assert its rights over the property. Therefore, the property in question in this case was subject to adverse possession.

Scheele also contends that even if the property in question was susceptible to adverse possession, the Gustins failed to meet their burden of proving that they acquired the land by adverse possession. A party claiming title through adverse possession must prove by a preponderance of the evidence that the adverse possessor has been in actual, continuous, exclusive, notorious, and adverse possession under a claim of ownership for the statutory period of 10 years. *Dugan v. Jensen*, 244 Neb. 937, 510 N.W.2d 313 (1994). The acts of dominion over land allegedly adversely possessed must, to be effective against the true owner, be so open, notorious, and hostile as to put an ordinarily prudent person on notice of the fact that the land is in adverse possession of another. See *Cunningham v. Stice*, 181 Neb. 299, 147 N.W.2d 921 (1967).

Moreover, an adverse possessor can succeed in his claim even if he does not know he is occupying land not included in his deed or chain of title. *Converse v. Kenyon*, 178 Neb. 151, 132 N.W.2d 334 (1965). However,

> the placement of a fence within one's boundary line does not lead to the relinquishment of ownership of lands outside the fence, without an additional showing that those lands outside the fence have been used by the neighboring landowner under a claim of ownership for the requisite period of time.

*Martin v. Kozuszek*, 216 Neb. 705, 708, 345 N.W.2d 26, 27-28 (1984).

The Gustins contend that they and their predecessors in interest have satisfied these requirements beyond a preponderance of the evidence.

The evidence presented at trial indicates that the strip of land in question has been enclosed by a fence which the Gustins believed to be the southern border of their property when they purchased the land in 1982. Although it is not clear from the evidence whether the railroad or the Gustins' predecessors in interest erected the fence, one witness testified that this fence was "typical railroad fence" and had been in place for approximately the last 75 years. The Gustins used the full extent of the land in question for cattle grazing throughout the extent of their ownership of Lot 20. Moreover, prior to

Scheele's actions in 1993, neither the railroad nor its successors in interest had maintained or interfered with the property north of the fence line, although the railroad did maintain the property south of the fence.

After a de novo review of the evidence, we conclude that the Gustins have satisfied the requirements of adverse possession. Therefore, we affirm the order of the district court quieting title to the area of land located in the South half of Section 31, Township 8 North, Range 8 East of the 6th P.M., Lancaster County, Nebraska, which is enclosed by the boundary fence at the southern end of Lot 20.

AFFIRMED.